67 So.2d 31

**PERCOFF et al. v. SOLOMON.**

**I Div. 479.**

Supreme Court of Alabama.

Aug. 11, 1953.

Caffey, Gallalee & Caffey and Leo M. Brown, all of Mobile, for appellant.

Robt. E. Hodnette, Jr., Mobile, for appellee.

Godbold & Hobbs, Montgomery, Amici Curiae.

LAWSON, Justice.

The bill in this case was filed in the circuit court of Mobile County, in equity, by Madeline Solomon against Sam Percoff, Goldie G. Percoff and Manuel's Inc.

Respondents Sam Percoff and Goldie G. Percoff demurred to the bill. They have appealed to this court from a decree overruling their demurrer.

The controversy arises out of a lease executed on or about September 30, 1946, wherein appellee leased to appellants a store building known and described as number 25 South Conception Street, Mobile, Alabama.

The lease is made an exhibit to the bill. The parts of the lease which we understand to be pertinent to the instant controversy are as follows:

"State of Alabama ⎰
Mobile County ⎱

"This Lease, made this 30th day of September, 1946 between Madeline Solomon, party of the first part, hereinafter called lessor, by Julius E. Marx, as agent of lessor and Sam Percoff and Goldie G. Percoff, parties of the second part, hereinafter called the lessee.

"Witnesseth: That the lessor does hereby lease and rent unto the lessee, the following premises in the City of Mobile, Alabama, viz: No. 25 South Conception Street for occupation by the lessee as retail store for the sale of ladies ready-to-wear, not including the right to sell jewelry, costume or genuine, of any kind whatsoever, and for no other different object or purpose, for and during the term of 60 months 15 days, to-wit: from the 15th day of October, 1946, to the 31st day of October, 1951, and the lessor shall not be liable for the failure to deliver possession of said premises, provided the lessor shall exercise due diligence.

"The lessee agrees to pay to the lessor or said agents, at the office of said agents, the sum of $10,587.50 by one installment of $262.50, due October 15, 1946, and by 59 installments of $175.00 each due and payable, respectively on the 1st day of December, 1946, and on the first day of each month thereafter, together with such additional rent as provided for under and pursuant to the terms of Additional Rent Clause Rider attached hereto and by reference made a part hereof. * * *

\* \* \* \* \* \*

"Additional Rent Clause Rider. It is agreed between the parties hereto that the Lessee further covenants to pay to the Lessor as additional rent annually during the term of this lease a sum of money equal to 6% of all Gross Sales resulting from the Lessee's business conducted in, upon, or from the leased premises in excess of $35,000.00 for each annual period. The first annual period shall extend until December 31, 1950. The final period under this additional rent clause shall be from January 1, 1950, to October 31, 1951, and during said final period the Lessee agrees to pay to the Lessor as additional rent 6% of all said Gross Sales for said period in excess of $29,166.66. Additional rent payments due hereunder shall be payable for each of the above described periods on or before the 30th day of the month next succeeding the date when such period shall end; and each said payment shall be accompanied by such statements and accounts as hereinafter provided for.

"The term 'Gross Sales' as used herein shall include (1) the selling price of all merchandise sold by this Lessee or sub-tenants of this Lessee, whether for cash or on credit, and in case of sales on credit, whether payment is actually made or not; provided, however, that the selling price of all merchandise returned by customers to the Lessee and accepted by Lessee shall be excluded; and (2) the charges made by the Lessee, or by anyone on Lessee's behalf, for the rendition to Lessee's customers of service of any kind whatsoever, it being understood that such services may

be rendered without charge. Any sales taxes which the Lessee may be required to collect and account for to any governmental authority shall not be included in determining said 'Gross Sales.'

"The Lessee further covenants that for the purpose of ascertaining the amounts payable as additional rent for any period as hereinabove provided, Lessee will keep at its executive offices, books · which shall show daily sales made by the Lessee in, on or from the demised premises, and further agrees to deliver to the Lessor duplicate statements of the total gross sales made in, on or from said premises, signed and sworn to by Lessee, and to furnish Lessor with duplicate copies of an annual audit of a certified public accountant of all such sales, and, at the election of the Lessor, to give the Lessor access to such books, accounts, records and reports of gross sales kept for the premises herein demised as show the daily gross sales of such business by Lessee and to permit Lessor to have an audit made thereof by accountant appointed by the Lessor. If any such audit reveals an error in sales, in excess· of $1000.00 in any period, as result of which the Lessor has been paid less than the amount to which the Lessor is entitled, then the expenses of such audit shall be borne by the Lessee, otherwise it will be borne by the Lessor. The result of such audit shall be final and binding upon both parties. The Lessee agrees to exhibit to the Lessor, or Lessor's agent, all tax returns, or copies thereof, made by the Lessee for State and/or Federal Income Tax or Sales or Use Tax.

"The Lessee covenants that for the purpose hereof the Lessee will install and maintain a system by which will be recorded the receipts from all gross sales and other transactions had in and upon said premises in connection with the Lessee's business, and that Lessee will keep same on file at its executive offices for a period of not less than one year and will give to the Lessor and Lessor's agents the privilege at any time during business ·hours of the Lessee of inspecting and examining Lessee's papers, bills, vouchers, records, books of account and sales slips, and that Lessee will freely lend Lessee's own assistance in the making of such inspection, examination or audit.

"All references to Lessee's 'Gross Sales' shall be deemed to include the gross sales of Lessees, Assignees, Subtenants or concessioners, if any, and the sum shall be included in the determination of the percentage rentals in the same manner as though they represent the sales made by the Lessee. Reference herein to Assignee, Subtenants, or Concessioners of this lease create no separate rights in the Lessee to assign or sub-lease except under the conditions elsewhere in this lease provided. Rent payable under this clause shall be subject to the Agents commission in the manner and amount provided for elsewhere in this lease."

The provisions of the first paragraph of the "Additional Rent Clause Rider" are not clear as to when payments provided for thereunder are to be made and as to what constitutes an "annual period." It would seem that each year would constitute an "annual period" and yet it is said: "The first annual period shall extend until December 31, 1950," thus embracing 50½ months. And in providing that, "The final period under this additional rent clause shall be from January 1, 1950 to October 31, 1951," the calendar year 1950 is included in both so-called "periods." We call attention to this situation although we are not primarily concerned here with the proper construction to be placed on those specific provisions of the first paragraph of the said "Rider."

The bill of Madeline Solomon avers in substance as follows:

The appellants went into possession of the leased premises on or about October 31, 1946. From that date until the time of the filing of the bill in this case appellants conducted and operated in, upon, and from

the leased premises a ladies' ready-to-wear store.

Appellants regularly paid the basic rental of $175 per month.

For the first year of the operation of said business, that is, from October 31, 1946, to December 31, 1947, appellants paid to lessee the additional sum of $2,544.95, based upon a gross sales figure of·$77,415.75, which amount was paid to appellee in January of 1948. The correctness of the amount of this payment is not questioned by appellee, complainant below.

On or about January 5, 1948, a corporation was formed known as Manuel's Inc., with its principal office being listed as 25 South Conception Street, the location of the leased premises. The appellant, Sam Percoff, is a director and is the president of the corporation and the owner of seventy shares of stock. The total number of shares of stock subscribed is 150. Goldie G. Percoff is a director and the vice-president of the corporation and owns five shares of its stock. The remaining seventy-five shares of stock stand in the name of Manuel Percoff, the son of Sam and Goldie G. Percoff.

There are no averments in the bill in regard to payments made, if any, by appellants to appellee based on gross receipts of the business at 25 South Conception Street for the calendar year 1948.

In the latter part of 1948 appellee discovered that appellants were negotiating for the rental of a store building situate directly across the street from the leased premises, which appellants proposed to use and occupy as a retail store for the sale of ladies' ready-to-wear. Appellee objected to this proposed action on the part of appellants, advising them that the result would be to diminsh the "gross business" done by appellants at 25 South Conception Street an that "the amount of such gross business was one of the inducements and considerations flowing to complainant [appellee] for the execution of and performance of the said lease."

But in spite of the objections voiced by appellee, the appellants on or about December 15, 1948, began to operate in a building across the street from 25 South Conception Street a retail store under the name of "Manuels Economy Shop," wherein they sold ladies' ready-to-wear merchandise in competition with the business conducted by appellants at the leased premises. Appellants were operating the business across the street from the leased premises when this bill was filed. In regard to the business conducted across the street from the leased premises the bill avers: "that respondents Sam Percoff and Goldie G. Percoff acting by and through and in conjunction with respondent Manuels Inc. thereafter conducted the said ladies' ready-to-wear business in, upon and from the rented premises and that respondent Manuels Inc. was and is under the direction and control of the respondents Sam Percoff and Goldie G. Percoff."

As a result of the operation by appellants of a competing business directly across the street from the leased premises "there was a material and very large reduction in the reported gross sales in the rented premises and in the reported gross percentage rental flowing to the landlord."

In regard to the so-called percentage rental for the leased premises after appellants began to operate the competing business, the bill avers:

"For the second [third] year of the lease, that is for the calendar year 1949, respondents furnished complainant with a statement purporting to show the gross sales conducted in, upon and from the rented premises to be $50,880.85 and did tender to complainant a check for the sum of $952.85 in full payment of the said gross percentage rental for the year 1949, which said check complainant refused to accept for reasons which will more particularly hereinafter appear."

For the fourth year of the lease, that is, "for the calendar year 1950, respondents furnished complainant with a statement purporting to show the gross sales conducted in, upon and from the rented premises to be $39,703.77 but have neither tendered nor paid any gross percentage rentals for that year."

In February, 1950, Madeline Solomon, the lessor, renewed her objections to the action of respondents in conducting a competing business across the street from the leased premises and "demanded that respondents furnish her the amount of gross business on the other business in order that the same might be included in the computation of the gross percentage rental provided for in the lease." There was no compliance with this request.

The bill contains the following language: "Attention of the court is called to the provision in said lease providing that a material consideration for the execution of said lease was the agreement by the respondents to pay to the complainant a percentage of 6% of the gross sales in excess of $35,000 per annum on all business conducted in, upon and from the leased premises and complainant avers that in consideration thereof, during the preliminary negotiations of the lease she reduced the proposed rent by a large amount, to wit, $100 per month."

The stating part of the bill is concluded with the following averments:

"9. Complainant further alleges that she is informed and believes and on such information and belief alleges the facts to be that under the circumstances here delineated the figures of the gross business from the competitive establishment across the street should in justice and in equity be added to those of the leased premises at No. 25 South Conception Street in order that complainant either (1) may figure upon them the percentage due as a part of the rental or (2) that complainant may equitably ascertain what portion thereof is due.

"10. No other, further or additional lease, contract or modification thereof of said lease between the parties has been made since the execution of said Exhibit 'A.'

"11. Complainant further alleges that her interests in the subject matter of this suit have been seriously injured; she further alleges that a justiciable controversy exists between herself and the respondents involving substantial property rights and that no adequate remedy is available to her through any other existing form of action for the judicial determination of said controversy."

The prayer for relief is as follows:

"(1) That your Honor upon such terms and conditions and upon such proof as the court may require, will issue a temporary restraining order, a temporary injunction and such other relief as to the court may seem just and equitable, restraining the respondents and each of them from operating or taking part in any operation of any competitive business at any address other than No. 25 South Conception Street, the rented premises; and that upon a final hearing of this cause the court will grant to complainant a permanent injunction permanently enjoining respondents and each of them, and every business enterprise of theirs or either of theirs, or in which they have a directing part, from engaging in the sale of ladies' ready-to-wear within such distance from said No. 25 South Conception Street, as to your Honors may seem fit and proper;

"(2) That your Honors will require the respondents and each of them to give the discovery prayed for in this bill of complaint;

"(3) That your Honors either through the court itself or by a reference to the Register will cause an accounting to be made of the details of each separate and several year of business done at such other address since the execution of said lease, Exhibit 'A,' to this bill of complaint;

"(4) That your Honors will render a declaratory judgment construing the said contract, Exhibit 'A,' so that the rights of the parties may be settled between them;

"(5) That upon a final hearing of this cause, your Honors will make, fix and determine the correct amount due complainant under said lease by the respondents and will render a personal decree therefor, ordering respondents

and each of them to pay the same, for which execution may issue;

"(6) That your Honors will decree that complainant has a lien as landlord for the payment of all of said amount, and that your Honors will, under the law and rules of this court, enforce said lien by a sale of the goods and effects of the respondent if necessary;

"(7) That your Honors will make and fix as a decree against each respondent the final amount due and will ascertain and decree a reasonable attorneys' fee to the complainant as provided for in said lease, together with all costs in her behalf incurred, for which execution may issue.

"(8) Complainant prays for such other, further and different relief to which she may be entitled in equity, the premises considered."

The appellants, Sam and Goldie G. Percoff, treated the bill as containing the following so-called aspects: (1) injunctive relief; (2) discovery; (3) accounting; and (4) declaratory judgment. Their demurrer was properly addressed to the bill as a whole and to each of the above named aspects.

The decree of the trial court from which Sam and Goldie G. Percoff have appealed reads as follows:

"This cause is submitted on the demurrer of Sam Percoff and Goldie G. Percoff to the Bill of Complaint, and being considered it is ordered, adjudged and decreed by the Court that said demurrer be and hereby is overruled and said respondents allowed twenty days in which to file an answer."

By separate assignments of error the appellants complain of the action of the trial court in overruling their demurrer to the bill as a whole and to each of the aspects to which their demurrer was addressed.

■ But the decree of the trial court is general. There was no ruling on the demurrer to the separate aspects. Rowe v. Rowe, 256 Ala. 491, 55 So.2d 749. In the Rowe case, supra we said:

"Demurrer was addressed to the bill a whole and also specially to the two aspects. Without ruling on the demurrers to the separate aspects, the trial court rendered a general decree overruling the demurrer to the bill. The effect of such a ruling was a ruling only on the demurrer to the bill as a whole and if either aspect were good, the decree is due to be affirmed. Badham v. Johnston, 239 Ala. 48, 193 So. 420. Cf. Alabama Chemical Co. v. Niles, 156 Ala. 298, 47 So. 239. See The Alabama Lawyer, Vol. 12 (1951), pp. 344, 353, The Demurrer in Equity, by Judge E. N. Creel. This is merely a corollary to the principle long established in our decisions that on appeal from a decree 'sustaining a demurrer to the bill' and no reference is made in the decree to the grounds of demurrer going to a part or aspect of the bill, only grounds going to the sufficiency of the bill as a whole will be considered, Penton v. Brown-Crummer Investment Co., 222 Ala. 155, 131 So. 14, and where a bill sets up several distinct equities, if complainant is entitled to relief on one or more, a decree sustaining the demurrer generally is to be referred to the grounds of demurrer addressed to the bill a whole. Florence Gin Co. v. City of Florence, 226 Ala. 478, 147 So. 417; Steele v. Freeman, 250 Ala. 336, 34 So.2d 139; Wood v. Estes, 224 Ala. 140, 139 So. 331; Oden v. King, 216 Ala. 504, 113 So. 609, 54 A.L.R. 1413." 256 Ala., 492–493, 55 So.2d 750.

■ If any aspect of the bill asserts matter of equitable cognizance, though not properly pleaded, the demurrer to the bill as a whole was properly overruled. Sellers v. Valenzuela, 249 Ala. 627, 32 So.2d 517.

■ There are only three grounds of demurrer addressed to the bill as a whole. They are as follows: "1. There is no equity in the bill. 2. Because the complainant has a plain and adequate remedy at law. 3. Because from ought that appears from the allegations of the bill the complainant has a plain and adequate remedy at law."

A demurrer on the ground that "there is no equity in the bill" is merely a general demurrer. Pate v. Hinson, 104 Ala. 599, 16 So. 527, 528, Equity Rule 14, Code 1940, Tit. 7 Appendix. The same is true of a demurrer taking the point that complainant has a plain and adequate remedy at law. Alabama Lime & Stone Co. v. Adams, 222 Ala. 538, 133 So. 580.

The bill in this case clearly shows a justiciable controversy between the parties as to their rights under the lease. Any person interested under a written contract may have determined questions of construction of the contract and obtain a declaration of rights, status or other legal relations thereunder. § 157, Title 7, Code 1940. The proceeding was properly filed on the equity side of the court. Wolff v. Woodruff, 258 Ala. 1, 61 So.2d 69; Darling Shop of Birmingham v. Nelson Realty Co., 255 Ala. 586, 52 So.2d 211.

There are cases wherein we have held it appropriate to make a construction or determination of rights or status on a demurrer to a bill seeking a declaratory judgment or where it appears that a question of law only is presented and the parties argue the case and appear to consider the question as fully presented at that stage of the litigation. Darling Shop v. Nelson Realty Co., supra; Carter Oil v. Blair, 256 Ala. 650, 57 So.2d 64.

Ordinarily where the bill for a declaratory judgment shows a bona fide justiciable controversy which should be settled, demurrer thereto should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper to introduce on submission for final decree. White v. Manassa, 252 Ala. 396, 41 So.2d 395. As pointed out in Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11, the test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all.

Where, as here, the averments of the bill sufficiently state a case for a declaratory judgment and the decree of the trial court overruling the demurrer is in general terms, although the demurrer is addressed to the bill as a whole and certain of its aspects, we cannot say that the decree of the trial court is erroneous. As we have heretofore shown, the trial court has not ruled on the demurrer addressed to the several aspects, but only to the bill as a whole and the grounds of demurrer addressed thereto were not well taken.

In contemplation of further proceedings in the trial court, we deem it advisable to express our views concerning appellee's right to the relief for which she prays other than for a declaratory judgment.

All of such relief depends upon appellee's insistence that under the lease the tenants, appellants here, are required to conduct a ladies' ready-to-wear business at the leased premises with diligence for the mutual benefit of all parties to the lease and in such a manner as to produce rental in excess of the minimum rent, and that the tenants by virtue of the lease are prohibited from engaging in a competing business in the immediate vicinity of the leased premises, thereby reducing the rent potential.

It is admitted by appellee that the lease contains no express covenants to that effect, but she argues that such covenants are implied by virtue of the fact that the lease provides for payment of rent based on gross receipts.

According to our research, the use of percentage leases in transactions of this kind is of comparatively recent origin.

This is the first case which has come to this court wherein are involved the rights, duties, and liabilities of the parties to a percentage lease. We were not concerned with those matters in Darling Shop v. Nelson Realty Co., supra.

Counsel for the parties to this appeal have cited cases from other jurisdictions where such matters have been considered. Many of the cases cited by counsel, and other cases, are collected in Garden Suburbs Golf & Country Club v. Pruitt, 156 Fla. 825, 24 So.2d 898, 170 A.L.R. at page 1113.

The author of the annotation in A.L.R. to which reference is made above makes the following observation:

"Percentage leases are admittedly in the nature of agreements 'sui generis,' and while they are generally governed by the rules of law applicable to ordinary leases, the peculiar features of provisions making rental dependent in some way upon a percentage of income from business on the leased premises frequently offer difficult and technical questions of construction."

Those cases which have dealt with percentage leases which contained express covenants to the effect that the lessee would use its best efforts to obtain and maintain the highest volume of business on the premises or would keep the store well stocked with merchandise and actively engage in selling it during the term of the lease shed no light on the question at hand for, as above indicated, the lease here under consideration contains no such express covenants. See Mayfair Operating Corp. v. Bessemer Properties, Inc., 150 Fla. 132, 7 So.2d 342; Orkin's Fashion Stores, Inc., v. S. H. Kress & Co , Sup., 68 N.Y.S.2d 764; Orkin's Fashion Stores, Inc. v. S. H. Kress & Co., Sup., 68 N.Y.S.2d 766.

The case of Marvin Drug Co. v. Couch, Tex.Civ.App., 134 S.W.2d 356, is distinguishable from the instant case on the facts. In that case no minimum rental being provided, the lessor was entirely dependent on the amount of gross cash receipts from sales and collections for any rent. To like effect see Seggebruch v. Stosor, 309 Ill. App. 385, 33 N.E.2d 159. The case of Marvin Drug Co. v. Couch, supra, was not followed in Palm v. Mortgage Investment Co., Tex.Civ.App., 229 S.W.2d 869, where a percentage lease with a substantial minimum payment was involved.

The cases of Sinclair Refining Co. v. Davis, 47 Ga.App. 601, 171 S.E. 150, and Sinclair Refining Co. v. Giddens, 54 Ga. App. 69, 187 S.E. 201, involved leases where the lessees were to pay $10 per month and a certain sum on each gallon of gasoline sold, but the lessees failed to operate the filling stations. It was held that the lessors were entitled to cancel. It is quite obvious that the minimum rent provided in the leases there under consideration was nominal rather than in itself a substantial and adequate rental for the demised premises. There is no averment in the bill presently under consideration tending to show that the minimum rent provided in the lease here involved was nominal. The two Sinclair cases have been held to be distinguishable on the facts from a case where the percentage lease provided for a substantial and adequate consideration. Cousins Inv. Co. v. Hastings Clothing Co., 45 Cal.App.2d 141, 113 P.2d 878.

No case has come to our attention which holds as a matter of law that under a percentage lease with a guaranteed substantial minimum rental, covenants are to be implied of the kind which appellee seeks to have implied in the lease under consideration.

Counsel for appellee have cited other cases in support of appellee's position, an examination of which we think shows the presence of factual elements which differentiate them from the present case. We will refer to those cases briefly.

In the case of Cissna Loan Co. v. Baron, 149 Wash. 386, 270 P. 1022, 1023, the defendant purchased an established department store business from plaintiff and leased plaintiff's building, agreeing to pay rent based on a percentage of gross sales with a yearly minimum. Among other provisions, the lease provided that defendant should "maintain and conduct a department store in said building of the same general character as has been theretofore conducted therein by first party (plaintiff) and carry and maintain a stock of goods, wares and merchandise of the same general character as has been theretofore maintained by first party". After taking occupancy of the building, the lessee moved two important departments of his store into an adjoining building not owned by the lessor. Openings were cut in the wall of the building to permit customers to move freely from one building to the other without going out into the street. The court held that sales from the two departments in the adjoining building were to be included in computing the percentage rental, although those sales were not made literally "in said [leased] building" as specified in the lease. Aside

from the express provisions of the lease which we quoted above, the court seems to have been influenced by the fact that the advertising and business administration for all departments was conducted in the leased building.

The case of Selber Bros. v. Newstadt's Shoe Store, 194 La. 654, 194 So. 579, Id., 203 La. 316, 14 So.2d 10, is also distinguishable because in that case the lease in question was a renewal lease and at the time it was signed the parties knew that 6% of the gross sales for a long period of time had averaged $400 per month, which was double the minimum rent provided for in the lease. That is not the situation in the instant case in so far as appellee's bill discloses.

In the two Goldberg cases (Goldberg, 168-05 Corp. v. Levy, 170 Misc. 292, 9 N.Y.S.2d 304, and Id., 256 App.Div. 1086, 11 N.Y.S.2d 315 [the second is an appeal from the first]), the lease provided that if the gross sales should not equal $101,000 a year, the tenant had the right to cancel the lease; and the lessee deliberately mismanaged the business and wilfully diverted it to another store owned by it, so that the gross sales amounted to less than $101,000 a year. The lessee then cancelled the lease, thereby depriving lessor of minimum rent as well as a percentage of gross receipts. The court held that such conduct was in direct violation of the covenant of good faith which exists in every contract. This again is a different situation from the present case where the tenant's conduct does not affect the payment of the minimum rent.

We think the case of Phillips v. Sipsey Coal Mining Co., 218 Ala. 296, 118 So. 513, is so clearly distinguishable from the instant case as not to require any discussion.

■ We do not think that proof of the averment of appellee's bill to the effect that during the negotiations leading up to the execution of the lease she reduced the fixed rent in the amount of $100 per month would be sufficient to read into the lease the covenants on which appellee's right to relief rests, other than the prayer for declaratory judgment.

Here appellee seeks to have the court read into the contract of lease matters which could have been written therein with no effort if such had been the intention of the parties.

■ An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so; or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole. Palm v. Mortgage Investment Co., supra.

In the recent case of Darling Shop v. Nelson Realty Co., supra, we said [255 Ala. 586, 52 So.2d 215]:

"It should be kept in mind that the court must construe a contract as it is written. The court cannot under the guise of construction make a new or different contract for the parties nor add to the terms of the contract words, terms or conditions not contained in it. * * * Furthermore in the absence of ambiguity the court cannot interpret the contract but must take it as it is written."

■ We have observed that the general rule in the law of contracts is that when the parties reduce their agreements and obligations to writing, the writing, in the absence of mistake or fraud, is the sole expositor of the transaction and intention of the parties. Ramsey v. Wilkins, 253 Ala. 614, 46 So.2d 407. See Birmingham-port Lumber Co. v. Chickasaw Wood Prod. Co., 244 Ala. 345, 13 So.2d 770; Jones v. Lanier, 198 Ala. 363, 73 So. 535.

In Collas v. Brown, 211 Ala. 443, 100 So. 769, we held that a covenant not to engage in competing business is not implied from

a sale of the "good will" of a business, and cannot be engrafted by parol.

We cannot say that the averments of the bill filed by appellee are sufficient to show a necessity to read into the lease the obligations on the part of appellants as contended for by appellee in order to effect the purpose of the parties. And clearly such obligations need not be implied to make the contract valid.

Cases from other jurisdictions which support our views wherein percentage leases were involved are hereafter cited: Jenkins v. Rose's 5, 10 and 25¢ Stores, 213 N.C. 606, 197 S.E. 174; Cousins Inv. Co. v. Hastings Clothing Co., supra; Palm v. Mortgage Investment Co., supra; Masciotra v. Harlow, 105 Cal.App.2d 376, 233 P.2d 586; Joseph E. Seagram & Sons v. Bynum, 8 Cir., 191 F.2d 5; Hoops v. Tate, 104 Cal.App.2d 486, 231 P.2d 560; Stockton Dry Goods Co. v. Girsh, 36 Cal.2d 677, 227 P.2d 1, 22 A.L.R. 2d 1460.

As indicated above, the decree of the trial court being in general terms and the grounds of demurrer going to the bill as a whole being not well taken, the decree appealed from must be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MERRILL, JJ., concur.