The MONTE CORPORATION, a Corporation, and The AI Company, a Corporation, Plaintiffs in Error,

v.

Florence L. STEPHENS and C. L. Stephens, Husband and Wife, Defendants in Error.

No. 37652.

Supreme Court of Oklahoma.

Feb. 18, 1958.

Rehearing Denied April 23, 1958.

Felix, Douglass & Griffin, By Kenneth J. Wilson and H. L. Douglass, Oklahoma City, for Plaintiffs in error.

Carmon C. Harris, Oklahoma City, for Defendants in error.

CORN, Vice Chief Justice.

This appeal involves an action for damages for the alleged breach of a commercial building lease that provides both for a minimum monthly rental and a larger graduated rental, or bonus, based upon a percentage of the gross receipts of the tenant's business operated in said building.

Both plaintiffs in error, the landlords, and defendants in error, the tenants, will be referred to as plaintiffs and defendants, respectively, as they appeared in the trial court.

Defendant leased the building to carry on a business of selling baby and children's wear, and related items. The term of the lease was for a period of five years, which commenced May 9, 1951. Approximately four years later, specifically on May 1, 1955, defendants moved their business out of, and abandoned the building; after which another tenant leased it, and during the approximate year remaining of the five year period specified as the aforesaid lease's term, paid plaintiffs the total sum

of $2,666.67 in monthly rentals for the building.

The rental provision, around which the controversy revolves, provided that the defendants, as "lessees" would pay the "lessor", as rental, either "the sum of Two hundred ($200.00) dollars per month as a minimum rental, or an amount of money in cash equal to seven percent (7%)" of the gross income of lessees that accrues from "said lessees' operations" in the leased premises during each month of the term of this lease, whichever sum is the greater.

After defendants commenced operation of the business, their gross income from it grew until, in 1953 and 1954, they were paying plaintiffs, under the above-quoted "percentage of income" rental provision, an average of a little more than $400 per month.

When plaintiffs sued defendants, in the present action, for damages, on the theory they had breached the lease contract by vacating the building before the end of the five year term specified therein, they sought as such damages the difference between $400 a month for 12 months, or $4,800, and the $2,666.67 which the subsequent tenant had paid them as rental on the building for the same year.

After a non-jury trial, at which most of the evidence was stipulated, judgment was entered for defendants on the basis of the trial court's conclusion that the minimum rental of $2,400 per annum was the maximum rental, whose payment plaintiffs could enforce, in the situation presented.

█ In herein seeking reversal of said judgment, plaintiffs base their asserted right to the difference of $2,113.33 between the subsequent successor tenant's rental payment of $2,666.67 and the $4,800 they maintain they would have received as their 7% of defendants' anticipated gross income (had their business continued in said building) upon assertedly express or implied terms of the lease to pay the larger

amount during said period, despite the fact defendants had vacated the premises. In support of their view that this was the measure of defendants' obligation under the lease, they call our attention to portions of the lease's paragraph No. 6, which reads in part as follows:

"Lessee agrees to continue only a lawful business on the leased premises * * *. In this connection, lessee agrees the leased premises is to be used only for the conduct of business in selling baby and children's wear, clothing and related items, and Lessor agrees that during the term of this lease no other part or portion of the property owned by Lessor will be rented for the conduct of a similar specialty shop * * *."

The only question we have to decide is whether the contract was such as to require the defendants to operate their business in the building so as to make the plaintiffs more rent each month than the minimum rent of $200 specified in the contract. After an examination of the entire contract we do not think it possible to give it that meaning. It appears to us under the terms of the contract the defendants could operate their business in the building one or two days a week if they so desired, or could close the store at any time for any period of time they desired, and only be liable for the $200 rent per month if 7% of the merchandise they actually sold during the month did not exceed that amount.

The authorities cited by the plaintiffs in support of their contentions are not applicable to the facts in this case.

█ There is no express covenant in the lease requiring the defendants to continue to occupy the premises and to conduct the business of selling merchandise therein, and under the terms of the contract relied upon by the plaintiffs, and cited herein, none can be implied, as the subject is completely covered by the con-

tract. See Masciotra v. Harlow, Cal.App., 233 P.2d 586.

Judgment affirmed.

WELCH, C. J., and DAVISON, JOHNSON and WILLIAMS, JJ., concur.

HALLEY, BLACKBIRD, JACKSON and CARLILE, JJ., dissent.