195 So.2d 782

**CHASTAIN & BLASS REAL ESTATE &
INSURANCE, INC.**

v.

**J. C. DAVIS, Jr., et al.**

I Div. 374.

Supreme Court of Alabama.

Feb. 16, 1967.

Reynolds & Lauten, Mobile, for appel-lant.

Tonsmeire, McFadden & Favre, Mobile, for appellees.

MERRILL, Justice.

Appellees Davis and Harper filed a declaratory judgment proceeding in equity to construe a contract whereby appellees purchased an insurance agency from appellant. The dispute arose over the amount due on the final payment. From a decree finding that appellees owed $1,329.12 instead of $4,668.39, as contended by appellant, this appeal followed.

Considerable negotiations were involved before the contract was signed. An old contract of purchase and sale was used, which had been based on premiums. Both sides agreed that wherever the word "premiums" appeared, it should read "commissions," and in quoting from the contract, we shall use the word "commissions."

The purchase price in the contract was $32,224.12. A down payment of $9,500 was made on September 30, 1963, the day the contract was signed, and notes were signed for the balance in three equal payments, due April 1, 1964, October 1, 1964 and April 1, 1965. All the payments had been made except the last one. After some agreed adjustments, the amount due accord-

ing to the appellant was $4,668.39, according to appellees $1,329.12.

This difference arose because of appellees' contentions that the agreement was based upon net commissions and not gross commissions, and that was the main issue tried before the circuit court.

We quote from two pertinent sections of the contract:

"It is understood and agreed that the purchase price which the Buyer is paying to the Seller for this business is based and predicated on one (1) and one-half (½) times the amount of the annual commissions which the Seller has represented to the Buyers he is receiving in this business."

" * * * It is further agreed between the parties hereto that the amount of annual commissions which the Seller hereby represents to the Buyers that he is receiving, which constitutes insurance business that is conveyed by this instrument to the Buyers, is in the amount of $21,-482.75. * * *"

When the negotiations were in progress, the parties had before them a tabulation of all the business done by the seller (appellant) the preceding twelve months. That tabulation was prepared by a Mrs. White, who worked for appellant and later worked for appellees, and was in their employ when the case was tried. The tabulation shows that the gross premiums for the period amounted to $99,850.85 and the gross commissions on the same premiums amounted to $21,482.75. One and one-half times this last amount equals $32,224.12, which was the agreed purchase price. That amount is the figure put in the contract, and is the total of the down payment plus the three notes. Both sides admitted that they used this tabulation in their negotiations, and Mrs. White testified that no request was made for any information regarding net commissions.

After the buyers (appellees) had operated the business about six months, they had an accountant figure what the net commissions on the premiums would be. It is undisputed that the difference between gross commissions and net commissions is the difference in what would be received if no policy was cancelled. Net commissions are what is received after cancellations.

Appellees contended in the lower court and here, that the word "receiving," used in the quoted excerpts from the contract, "denote[s] commissions actually earned or collected, that is, net commissions." The net commissions amounted to $17,662.30 and one and one-half times this amount, less payments and agreed adjustments, would leave only $1,329.12 owing on the unpaid balance.

Assignment of error thirteen is typical of others. It charges error on the part of the court in considering this evidence:

"Q. Is it your understanding of the agreement that that means net commissions, earned commission,—earned and net commissions are the same thing, aren't they?

"MR. REYNOLDS: I object to it—

"THE COURT: Overruled.

"MR. REYNOLDS: It's in contradiction of a written instrument.

"A. It is my understanding that these commissions would be net commissions.

"Q. Not gross?

"A. That's right."

■ Both the appellees were permitted, on direct examination, to give their opinion, interpretation, belief or understanding that their contract meant net commissions. Some of this testimony was objected to, some not. In equity trials, the presumption is that the trial court will consider only legal evidence, and no objection is necessary, Tit. 7, § 372(1), Code 1940; but where the trial court overrules an objection which was made to illegal evidence, the presumption is that he considered the illegal evidence and the ruling is reviewable. Low v. Low,

255 Ala. 536, 52 So.2d 218. Here, there is more than a presumption that the court considered the evidence. Had it not been considered, the decree would not be supported by any evidence.

That brings us to the question as to the legality or admissibility of this evidence.

■ While a contract may be explained consistently with its terms, parol evidence of a term not shown by the writing is not admissible where no fraud is charged, because its effect would be to vary the terms of the written contract by superadding another term or condition not expressed by the parties. Brown v. Scheuer, Wise & Co., 210 Ala. 47, 97 So. 50, and cases there cited.

■ When the parties reduce their agreements and obligations to writing, the writing, in the absence of mistake or fraud, is the sole expositor of the transaction and intention of the parties. Percoff v. Solomon, 259 Ala. 482, 67 So.2d 31, 38 A.L.R.2d 1100.

■ A witness may not testify to his uncommunicated opinions, beliefs, purposes or interests. Cooke v. Embry, 219 Ala. 623, 123 So. 27; 9 Ala.Dig., Evidence, ⊜151(1).

- ■ Our courts held that it is reversible error to permit a party to testify as to his "understanding" of a contract or a letter the basis of a suit. Resolute Fire Ins. Co. v. O'Rear, 34 Ala.App. 249, 38 So.2d 616. See Industrial Savings Bank v. Mitchell, 25 Ala. App. 13, 140 So. 449. In Mobile, J. & K. C. R. R. Co. v. Hawkins, 163 Ala. 565, 51 So. 37, a letter was the basis of the contract which was alleged to have been breached and the court was dealing with an answer of a witness as to his understanding of the contract. This court said:

"It would have been reversible error in the court to refuse to exclude that part of the answer of the plaintiff to direct interrogatory—had there been an objection to the interrogatory, or could this court know that it was not responsive to the interrogatory—which was as follows: 'But it was my understanding that the salary was to remain as before.' This was certainly a gratuitious conclusion of the witness upon the construction of the letter, a question for the court and the jury, and not for the witness. Both the plaintiff and Dewey had testified that nothing was said between them, in connection with the making of the contract sued upon, as to the salary. What the salary, or the amount of the salary, was, was undoubtedly a question to be determined by the jury from the evidence; and the witness having stated that nothing was said about it between the parties, at the time of making it, and the written contract having been introduced in evidence, it was clearly error to allow this witness, who was the plaintiff, to testify that it was his understanding that his salary was to remain as before. It was in effect construing the letter. He had stated all the facts in connection therewith, and so had the witness Dewey, and he should not have been allowed to testify as to his uncommunicated understanding of the effect of the contract alleged. This was not a shorthand rendering of facts, within the rule above described, but an unwarranted statement by the witness of his uncommunicated understanding of a written contract."

There is no dispute as to the facts. The only figures used by the parties were those compiled by Mrs. White showing *gross* premiums of $99,850.85 and *gross* commissions of $21,482.75 and the figure $32,224.12 as the purchase price, which was one and one-half times the gross commissions. Appellees took the old contract form and the figures with them and "had it retyped, just changing the names and amounts, and we came back together and then we went over it again with Mr. Chastain, and at that time executed it." They also paid $9,500 down and executed notes for the balance, totaling the same figure that was one and one-half times the gross commissions listed on Mrs. White's tabulation. Appellees agreed that there was no notation or mention of net commissions, that they looked at and figured

from the gross commissions and they also agreed that they did not claim any fraud or misrepresentation.

■ It follows that the trial court erred in considering any parol evidence which appellees Davis and Harper gave, which, in the absence of fraud, changed or varied the terms of the written contract by super-adding a new term (net commissions) not expressed or mentioned by the parties at the time of the execution of the contract, and not thought of until six months after execution, and raised only when the last note was due.

■ The trial court also erred in allowing the appellees to state conclusions as to their "understanding" of the contract.

■ It was also error to admit complainants' Exhibits 4 and 5 which were mathematical calculations based upon a purchase price which was one and one-half times the net commissions.

■ The appellees lay much stress on the representation made by appellant that it was "receiving" and "realizing" $21,482.75. That is exactly the amount of gross commissions which the business received or realized in the year immediately preceding the sale. The appellant admits that the business did not receive $21,482.75 in net commissions, but the summary showing gross commissions was available for everyone's perusal during the negotiations, and appellees knew, or should have known, that the commissions referred to in the contract as being received were gross commissions which totaled $21,482.75. There is no dispute that the appellant did put the business on its books and its accounts payable showed that it would be "receiving" that amount in commissions. Again, we note that appellees do not charge appellant with fraud or misrepresentation. We cannot agree with appellees that the word "receiving" as used alters, varies or modifies the agreed terms of the contract by adding the word "net" in front of commissions as used in the contract.

With the exclusion of the inadmissible evidence, there was no remaining legal evidence to support the finding of the court below. The decree is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.