**ANELUCA ASSOCIATES**

v.

**Rocco LOMBARDI et al.**

**No. 91–361–Appeal.**

Supreme Court of Rhode Island.

Feb. 10, 1993.

Thomas Hefner, Fogarty & Hefner, Greenville, for plaintiff.

Lauren E. Jones, Pamalee McFarland, Jones Associates, Geoffrey A. Regan, McGovern, Noel & Benik, Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeals by both parties from a judgment entered in the Superior Court awarding Aneluca Associates (Aneluca) possession of certain leased premises situated at 1599–1609 Post Road in the city of Warwick. Rocco and

Rosalba Lombardi (the Lombardis) appeal from the judgment, while Aneluca cross-appeals from the order of the trial justice permitting the Lombardis to amend their answer in order to assert affirmative defenses of estoppel and waiver. We reverse the judgment for possession and do not reach the issues of waiver and estoppel. The facts of the case insofar as pertinent to this appeal are as follows.

In 1968 Aneluca entered into a lease of the subject land with Burger Castle Systems, Inc. (Burger). Pursuant to the lease, Burger constructed a building on the premises in which it operated a fast-food restaurant. The lease had an initial term of twenty-one years and provided for three options to renew, each for a period of ten years. The lease was a land lease under which the lessee was to pay a rental of $8,400 per year in monthly installments of $700 during the first fifteen years of the lease. From the sixteenth through the twenty-first years, and during any renewal periods the lessee was required to pay to Aneluca either $8,400 per year or 3 percent of the lessee's gross annual sales, whichever would be greater.

Under paragraph 7(d) of the lease, the lessee covenanted "[t]o keep the said building so to be erected and all other buildings and improvements which may at any time during the said term be erected upon the demised premises and the drains and appurtenances in good condition and repair."

Under paragraph 9 of the lease, it was agreed that any building or structures constructed by the lessee should be and remain the property of the lessee or sublessee during the term of the lease and any extensions or renewals thereof. The lessee and any sublessee had the right to remove any such improvements at any time during the term of the lease or any extensions or renewals thereof. However, any buildings or alterations or improvements that remain upon the land at the termination of the lease would become the property of the then-owner of the land.

Under paragraph 11 of the lease, the lessee was given the right to assign the lease with the consent of the lessor, which consent would not be unreasonably withheld. The lessee was given the right to sublet the leased premises at any time during the lease or renewal thereof without the consent of the lessor.

In October 1972 Burger assigned the lease to Arthur Treacher's Fish & Chips (Treacher). On February 26, 1982, Treacher assigned the lease to the Lombardis with Aneluca's written consent. Aneluca and the Lombardis entered into an amendment and addendum to the lease dated November 30, 1982. This amendment confirmed that the lease together with renewal options could run a total of fifty-one years and was designed to clear certain ambiguities in respect to the term set forth in paragraph 1 and the rent set forth in paragraph 2. However, the rent continued to be the greater of $8,400 per annum or 3 percent of the lessee's gross annual sales.

The Lombardis proceeded to operate a restaurant known as Arby's Roast Beef under a franchise. They had paid $185,000 for the assignment of the lease and an additional $85,000 to renovate the building. They financed these sums with a loan secured by a mortgage given to Greater Providence Deposit Corporation. In 1986 the Lombardis refinanced their loan at a reduced rate of interest (from 16 percent to 10 percent) with Piero Maggiacomo (Maggiacomo). This loan was secured by an assignment of their interest in the lease to Maggiacomo. Aneluca consented to the assignment.

Beginning in February 1982, the Lombardis operated Arby's Restaurant. The management was free of any interference from Maggiacomo regardless of the security assignment. This operation continued until April 1988, at which time the interior of the building was damaged by fire. During the years 1985 through 1987, the Lombardis paid the following sums over and above the base rate of $8,400, calculated upon 3 percent of their gross annual sales: 1985—$5,000; 1986—$3,000; 1987—$2,000.

Paragraph 21 of the lease provided that the lessee, in the event of damage exceeding 50 percent of the buildings and improvements, might terminate the lease on

thirty days notice after the occurrence of such damage upon payment of the sum of $7,500 and payment of the monthly rental until the completion of the "particular lease term." The fire of April 1 did not cause exterior damage but did damage the interior from smoke so that the restaurant had to be closed. No evidence was introduced indicating that this damage equaled or exceeded 50 percent of the value of the improvements. The Lombardis, in accordance with directions from the appropriate Warwick municipal authorities, boarded up the building and secured it from the elements. The Lombardis collected the insurance and paid off the loan to Maggiacomo but decided not to refurbish and reopen the building for restaurant purposes.

Aneluca sought to persuade the Lombardis to repair the building and operate a restaurant therein. In the course of these negotiations the Lombardis attempted to find a new tenant to whom they might either assign or sublet the premises. One such prospect was a car dealership. Aneluca failed to agree to this assignment because of problems concerning the 3 percent rental override. Another prospect was a computer company, but Aneluca took the position that it would consent only to a fast-food restaurant as assignee. A third prospect was a Taco Bell franchise on which agreement did not come to fruition through no fault of the parties.

On February 15, 1989, Aneluca sent to the Lombardis a notice of default, claiming that their failure to repair the premises had deprived Aneluca of the rent override provided in paragraph 2(a) of the lease and was thus a violation of paragraphs 7(a) and 7(d) of the lease.

During all of this period the Lombardis paid the basic rent on the leased premises at $700 per month. Various other defaults were cited by Aneluca, but all were cured within the thirty day period provided by the lease. Thus, the only real dispute between the parties was the failure of the Lombardis to restore the building and operate a business therein, which might produce additional income for Aneluca through the 3 percent override provision.

On May 23, 1989, Aneluca began an action in Kent County Superior Court, seeking to have the lease terminated by reason of default. The Lombardis counterclaimed that Aneluca unreasonably withheld consent to certain assignments. On June 16, 1989, the Lombardis gave notice to Aneluca that they would exercise the first of the three ten-year options to renew. Meanwhile, in December 1989 the Lombardis sought to assign the lease to a Dairy Queen franchise. Aneluca was agreeable to such an assignment, but Dairy Queen decided not to enter into an agreement because that assignment would have required Dairy Queen to erect a new building.

On February 2, 1990, Aneluca sent to the Lombardis another notice of default, setting forth grounds that were substantially identical to those claimed in the first notice. On April 23, 1990, Aneluca commenced a trespass and ejectment action in the District Court. This action was ordered by a judge of the District Court to be removed and consolidated with the Superior Court action.

On October 2, 1990, the Lombardis found a new prospective tenant, Soli's Japanese Steak House, Inc. (Soli's). They sought to have Aneluca consent to an assignment to this new tenant. Aneluca withheld its consent and pressed forward with its legal action. The Lombardis then sublet the premises to Soli's without obtaining consent from Aneluca, and thereafter Soli's remodeled the building as required for its purposes. Soli's opened for business December 15, 1990. Its arrangement with the Lombardis was to pay to them monthly rental in the amount of $2,000 plus a 3 percent override based upon gross income. The override would be payable to Aneluca in addition to its $8,400 annual basic rent.

After a trial in the Superior Court, conducted by a justice without the intervention of a jury, the trial justice held as a matter of law and found as a matter of fact that the Lombardis had violated paragraph 21 of the lease, which required the Lombardis to devote the insurance proceeds to the repair of the premises. She further held

that the Lombardis had no authority, apparent or otherwise, to sublet or assign their interest in the Aneluca lease and that their attempted renewal for a ten-year period was ineffective because they were in default at the time of their purported exercise of the option. She found specifically that there was no evidence that the damage incurred equaled or exceeded 50 percent of the insurable value of the premises. The trial justice rendered judgment in favor of Aneluca for possession of the premises, but denied its claim for damages by reason of lack of evidence of monetary loss. Aneluca's cross-appeal related only to the granting of the motion to amend the answer. Aneluca did not appeal the denial of the claim for damages.

In support of their appeal the Lombardis raise a number of issues. We shall deal with the dispositive issues in the order in which they are raised in the Lombardis' brief. The remaining issues will not be reached since our response to the dispositive issues will be conclusive.

## I
## THE BREACH OF PARAGRAPH 21 OF THE LEASE

We are of the opinion that the trial justice erred as a matter of law in determining that the Lombardis had breached paragraph 21 of the lease. Her finding that there was no evidence that the damage to the leased premises had equaled or exceeded 50 percent of the value of the leased premises meant that paragraph 21 was not triggered. Paragraph 21 was not asserted by Aneluca as a reason for default, and upon our examination of the record and the findings of fact of the trial justice, we believe that paragraph 21 is irrelevant to this proceeding.

## II
## THE BREACH OF THE COVENANT TO REPAIR AND THE COVENANT TO PAY RENT

The Lombardis argue that they had no obligation under the clear and unambiguous terms of this lease to operate a business continuously on the leased premises in order to generate income pursuant to the 3 percent override provision. With this contention we are in agreement. This lease was a ground lease under which the lessee had the right to make such improvements as it saw fit and to remove such improvements from the premises without any permission or leave from the lessor. Any buildings or improvements were owned by the lessee, and under paragraph 7 of the lease, the lessee had the concomitant duty to keep such buildings and improvements in repair. The lessor had no duty in this respect.

The duty to repair must be considered in conjunction with the duty to pay rent. Under paragraph 2 of the lease the lessee had the unequivocal obligation to pay to the lessor the sum of $8,400 per annum for the land. In addition, the lessee would be required to pay 3 percent of the gross income generated by any business conducted on the premises to Aneluca if such sum were greater than the $8,400 basic rent. This meant that the 3 percent override would come into effect only if the gross income generated by the business exceeded $280,000 per year.

No express term of the lease required the lessee to conduct a business that would generate gross income in excess of $280,000 per year. Reading the lease as a whole, we are of the opinion that there is utterly no basis for an implication of such a duty. Under the clear and unambiguous terms of the lease, the lessee would not be in default if it conducted a business that never attained such a gross income. Obviously the parties to the lease, including Aneluca, relied upon the assumed best interest of the lessee to conduct a business that would produce income for its own benefit. However, there was no provision under which the lessee was required to exercise best efforts to maximize the income payable to Aneluca.

A number of cases have been cited by the parties, but they are of limited applicability to the case at bar. However, some of the cases are of persuasive authority in construing the duty of the Lombardis un-

der the override rental clause. In the case of *Mercury Investment Co. v. F.W. Woolworth Co.*, 706 P.2d 523 (Okla.1985), a lessor under a provision that established a basic minimum monthly rent together with extra sums based upon income sought to declare Woolworth in default on the basis of an implied covenant to exercise diligent efforts to generate the rental income override. The court declined to imply such a covenant under circumstances wherein a substantial minimum rent was provided in the lease. *Id.* at 530–31. A similar conclusion was reached by the Supreme Court of Alabama in *Percoff v. Solomon*, 259 Ala. 482, 67 So.2d 31 (1953). In that case the tenants paid a basic monthly rent together with an additional rent equal to 6 percent of the gross income from a retail clothing store. *Id.* at 484, 67 So.2d at 33. For their own benefit the tenants opened a competing store across the street. *Id.* at 486, 67 So.2d at 35. The lessor sought the aid of the court in declaring that the tenants had an implied obligation to conduct their business in a manner that would produce additional income under the 6 percent provision. The Alabama court held that engrafting such an implied provision upon the contract would in effect be a rewriting of the bargain reached by the parties. *Id.* at 491–92, 67 So.2d at 40–41.

The general principles applicable to implication of covenants in circumstances similar to the case at bar have been aptly summarized by Justice Opala of the Supreme Court of Oklahoma in *Mercury Investment Co., supra.*

"As a general rule implied covenants are not favored in the law. This view owes its force to the presumption that when the parties have entered into a written agreement that embodies their obligations, they have expressed all of the conditions by which they intend to be bound. Courts are reluctant to imply covenants where the obligations sought to be imposed on the contracting parties are not expressed in the written text. Absent illegality, contracting parties are free to bargain as they see fit. When the bargained-for agreement is reduced to writing, a court may not make a new contract for the parties or rewrite the existing contract.

"This does not mean that covenants may never be implied from written agreements. Because the courts are reluctant to tamper with the parties' written contract, certain conditions are imposed before a covenant will be inferred from the language used. There are many decisions, mostly from other jurisdictions, laying down well defined rules that govern implied covenants in lease contracts, where as here, there is a provision for a guaranteed minimum rent and a further provision for a percentage rental. The general rule enunciated in these decisions is that (1) the obligation must arise from the presumed intention of the parties as gathered from the language used in the written instrument itself or it must appear from the contract as a whole that the obligation is indispensable in order to give effect to the intent of the parties; and (2) it must have been so clearly within the contemplation of the parties that they deemed it unnecessary to express it.

"Recognized as a corollary to the general rule governing covenants that could be inferred from a written instrument is the principle that when the rental reserved in a lease is based upon a percentage of the gross receipts of a business and a guaranteed substantial minimum rent, a covenant would not be implied; but if the minimum rental is so low as to be nominal, or where there is no minimum rental, then a covenant might be implied. We followed these principles in *Monte Corp. v. Stephens* [324 P.2d 538 (Okla.1958)]. *Stephens* was an action to recover damages for breach of a lease that provided both for a guaranteed minimum rental and a rental based on a percentage of gross receipts. We refused to imply a covenant that would have required the tenant to occupy the premises and generate percentage rentals throughout the term of the lease because the lease called for a 'substantial, adequate minimum rent.'" 706 P.2d at 530–31.

We are persuaded by the aforesaid reasoning and shall apply these principles to the case at bar. In the circumstances of this case, it is clear that the parties in their comprehensive agreement furnished no indication upon which an implied covenant to generate additional income could be based. In this case the minimum rent provided was substantial. Like the Oklahoma Supreme Court, we decline to rewrite the agreement in order to create such a provision by implication.

Consequently there was no duty to generate additional income, either express or implied, imposed upon the Lombardis as lessees. Their failure to obtain a satisfactory tenant or to operate a business themselves that would generate override income within a time limit acceptable to Aneluca did not, as a matter of law, constitute a default under the lease.

## III

### THE OPTION TO RENEW

The trial justice, pursuant to her holding that the Lombardis were in default for violation of their duty to repair at the time they purported to exercise an option to renew, determined that their exercise of the option was ineffective. Our conclusion that the failure either to install a new tenant or to operate a business themselves did not constitute a default by the Lombardis is dispositive of this issue.

When the Lombardis sent notice that they would exercise their option to renew on June 16, 1989, they had paid their rent in the basic amount agreed upon by the parties. The fact that they had not yet found a viable tenant, as we have indicated above, did not constitute default of their obligations under the lease. Consequently the exercise of the option to renew was effective. The trial justice erred in holding otherwise.

## IV

### THE SUBLEASE

It is clear from the term of the lease that the lessees had the right to assign the lease only with the consent of the lessor. However, the lessees were entitled to sublet the premises without the consent of the lessor. The distinction between subletting and assigning of the lease is evident. By assigning the lease, the lessees would divest themselves of all obligations to comply with the terms thereof. The new lessee would be solely responsible for carrying out the terms of the lease and making the necessary payments thereunder.

In a subletting arrangement, however, the Lombardis would still be responsible for carrying out all the lessees' obligations. The subtenant would be responsible to the lessees, but any failure on the part of the subtenant would not affect or diminish the obligation of the Lombardis toward Aneluca. In this situation there is a marked distinction between assignment and subletting. All the evidence presented in the case tended to prove that Soli's Japanese Restaurant was the subtenant of the Lombardis. There had been no assignment of the lease. Soli's was obligated to pay to the Lombardis a fixed rental for use of the premises. It is true that Soli's also paid 3 percent of its gross income for the benefit of Aneluca, but this payment did not convert this subletting into an assignment. The trial justice erred in holding that the subletting to Soli's was in effect an assignment and therefore a breach of the lease.

For the reasons stated, the appeal of the Lombardis is sustained. The appeal of Aneluca is denied pro forma. The judgment entered in the Superior Court is reversed. The papers in the case may be remanded to the Superior Court for entry of judgment in favor of the defendants.