[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11906
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 6, 2011
JOHN LEY
CLERK

D. C. Docket No. 2:09-cv-14271-JEM

COPLEY'S R.V. CENTER, INC.,
a Florida corporation,
DAYS CAMPING AND RV CENTER, INC,
a foreign corporation,
RCRV, LLC,
a foreign corporation individually
and on behalf of all others similarly situated,
d.b.a. River City RV,

Plaintiffs-Appellants,

versus

TEXTRON FINANCIAL CORPORATION,
a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 6, 2011)

Before BLACK, HULL and MARTIN, Circuit Judges.

PER CURIAM:

Copley's R.V. Center, Days Camping and R.V. Center, and River City RV (collectively, the Appellants) appeal the district court's grant of a motion for judgment on the pleadings in favor of Textron Financial Corporation (Textron), in the Appellants' action against Textron alleging breach of contract.[1] Specifically, the Appellants contend the district court erred in finding the Wholesale Security Agreements (WSA) between the Appellants and Textron, a commercial money lender, permit Textron to charge and collect interest on funds not yet advanced by it to recreational vehicle (RV) manufacturers.[2] The Appellants claim Textron could only charge interest from the date it actually paid the sum on the invoice to the RV manufacturers, which was later than the "interest start" date on the invoices. Textron argues that, based on the unambiguous language of the Appellant's respective agreements, it could charge interest from the interest start

---

[1]The Appellants also raise claims for breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Because we determine Textron did not breach its contract with the Appellants, we decline to address these issues.

[2]The Parties' WSAs incorporate separately executed "Finance Plans." Each Finance Plan includes "Statements of Financial Transactions" or "SOFTs," which are used for every item of financed RV inventory. The SOFTs also define certain terms in the Finance Plans, and for purposes of this opinion, will simply be referred to as "the invoices."

date printed on each invoice it sent to them. After review, we affirm the district court.[3]

"We review *de novo* the grant of judgment on the pleadings by the district court." *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). Further, "[c]ontract interpretation is a question of law and is subject to *de novo* review." *American Cas. Co. Of Reading, Pa. v. Etowah Bank*, 288 F.3d 1282, 1285 (11th Cir. 2002). It is undisputed that under the terms of the parties' agreements Rhode Island law applies. "[U]nless the terms of a written contract are ambiguous, it should be interpreted as a matter of law in accordance with its plain terms." *Rhode Island Depositors Econ. Prot. Corp. v. Coffey and Martinelli, Ltd.*, 821 A.2d 222, 226 (R.I. 2003).

The unambiguous language of the parties' WSAs allows Textron to charge interest on its loans prior to advancing funds to the RV manufacturers for new inventory. According to each separately executed WSA, the Appellants agreed to pay those amounts as set forth in each invoice. Each invoice set forth the cost of the recreational vehicle(s) being financed along with a specific interest rate and

---

[3]A panel of this Court has recently decided the issue of whether written finance agreements permitted Textron to charge a recreational vehicle dealer interest on funds before Textron had actually paid these funds to the manufacturers. *See Textron Financial Corp. v. RV Sales of Broward, Inc.*, No. 10-11178, 2010 WL 4892859 (11th Cir. Dec. 2, 2010). The opinion in *RV Sales* holding the unambiguous terms of the parties' written agreements obligated the Appellants to pay the interest Textron charged is consistent with our decision in this case.

3

interest start date. The WSAs expressly provide that Appellants "promise[] to pay to [Textron] the original invoice cost ("Invoice Cost") of each item of Collateral financed or refinanced for [Appellants] by [Textron] pursuant to . . . finance plans, together with interest and charges on the Invoice Cost as specified in the applicable Finance Plan and this Agreement (collectively, the "Total Debt")."

The WSAs also provide that unless the Appellants objected in writing to an invoice within ten days of the date it was received, they were bound by the terms of that invoice. It is undisputed that the Appellants failed to object in writing to the invoices they received from Textron. Further, the Appellants did not object to interest beginning to run from those specific dates, regardless of when Textron paid the RV manufacturers.[4]

Lastly, in each WSA, the Appellants agreed "that its obligations to [Textron] with respect to such collateral shall be absolute and unconditional at all times after [Textron] *has advanced or committed to advance* all or any part of the invoice cost of such collateral to the seller thereof." (capitalization altered and

---

[4]Under its separate agreements with the RV manufacturers, Textron committed to pay the manufacturers 10 to 24 days after the invoice date. Contrary to Appellant's argument, Textron did not have an affirmative duty to disclose to the Appellants the terms of its separate agreements with the RV Manufacturers. If the parties had wanted certain disclosure requirements, they could have bargained for them and included them in their written agreements. *See Aneluca Assoc. v. Lombardi*, 620 A.2d 88, 92 (R.I. 1993) ("Absent illegality, contracting parties are free to bargain as they see fit. When the bargained-for agreement is reduced to writing, a court may not make a new contract for the parties or rewrite the existing contract.") (quotation omitted).

emphasis added). Thus, according to the express terms of the WSAs, the Appellants were obligated to pay Textron the invoice cost–which included interest running from a specified date–even if Textron had not actually advanced funds to an RV manufacturer but had only "committed to advance" those funds. Accordingly, the district court did not err in granting Textron's motion for judgment on the pleadings.

**AFFIRMED.**