**LAVESON et al.**
v.
**WARNER MFG. CORP.**
Civ. No. 121.

United States District Court,
D. New Jersey.

Dec. 8, 1953.

23. Cf. Jones v. United States, 2 Cir., 207 F.2d 563.

McGlynn, Weintraub & Stein, Joseph Weintraub, Newark, N. J., for plaintiffs.

Samuel H. Nelson, Newark, N. J., for defendant.

HARTSHORNE, District Judge.

The plaintiffs, Abe Laveson and Edwin C. Scoblink, partners trading as Vulco Eastern Distributors—"Vulco"—, and the defendant, Warner Manufacturing Corp.—"Warner"—, entered into a sales agency agreement on October 8, 1949.

The agreement was to run for five years and provided that Vulco was to be the exclusive distributor within a certain geographical territory of Warner Weather Master Aluminum Combination Screens and Storm Windows. Furthermore, Warner was to supply Vulco with these windows in such quantities as Vulco shall "from time to time require, at prices to be agreed upon." If Vulco did not purchase an enumerated minimum quantity of windows it would lose its exclusive right of distributorship. The parties performed under the contract almost three years, and, according to an undisputed affidavit filed on behalf of Vulco, without any disagreement or difficulty with respect to price.

Vulco claims, in Count 1, that Warner has breached this agreement. Warner has moved to dismiss this count, Fed. Rules Civ.Proc. 12(b), 28 U.S.C., and for summary judgment as to this count, Fed.Rules Civ.Proc. 56, on the ground that this agreement is not a valid contract. Warner claims (1) that the agreement is too vague and indefinite to be enforced, since an essential element of the agreement—the price—was left for future determination of the parties, and (2) Vulco has made only an illusory promise, for the above reason and because Vulco is bound only to buy what it may "require".

Both parties agree that New Jersey law governs.

The general contract rule is, that when the parties have not agreed (1) upon a price, or (2) upon a practicable method of determining the price, or (3) that the price is to be a "reasonable" one, the contract is unenforceable. Corbin on Contracts, Sec. 97. However, there are certain well recognized exceptions to this general rule, into one of which the instant case apparently falls. Exclusive sales agency contracts, such as the present, differ from ordinary sales contracts in many respects, so that the normal contract rule cannot be blindly applied thereto. There are these important differences, as to the element of price, between ordinary sales contracts and sales agency contracts. In ordinary sales contracts, the price is not passed on to a third party, but is ultimately borne by the purchaser and paid by him to the seller. Hence the fixing of this price is essential to the contract. It is the very point in which the parties are primarily interested. Not so in the case of a sales agency contract. For

there, both the principal and the sales agent pass on the agency price, in question, to the third party purchaser, to be paid by him, plus the agent's commission, as the final purchase price. For this reason the agency price is not so crucial to the parties in the sales agency contract. Furthermore, what the parties to a sales agency contract are interested in, is not a good price on a single sale, as in the case of an ordinary sales contract, so much as in a substantial volume of sales, each of which will give a fair profit to both the parties to the sales agency contract. Again, both such parties realize, that to fix an unreasonably high price will lessen this major desideratum of a volume of sales. Finally, both parties to a sales agency contract realize that the agency price, which, as one element of the ultimate sales price, will help both the principal and his sales agent attain this desideratum of sales volume, cannot be determined at first, but only as the result of actual experience. For all these reasons, the price element in a sales agency contract differs from such element in an ordinary sales contract, and is not of the essence in the former, as it is in the latter. Further, it cannot be finally fixed in a sales agency contract entered into at the very beginning of the sales agency. The New Jersey courts have stated the principle as follows:

"This type of contract is a comparatively recent device to meet modern needs in the marketing and distribution of goods on a nationwide or regional scale. In the very nature of the exclusive sales and distribution contract, it is not usually practicable to fix prices and the *quantum* of goods sold; and the rules of certainty and definiteness which govern the ordinary contract of sale have no application. Unlike a pure contract of purchase and sale, agreements of this class embody mutual promises and obligations with sufficiently definite standards by which performance can be tested. The grant of the exclusive franchise is a consideration for the grantee's obligation to establish and develop a market for the sale and distribution of the product in the area covered by the monopoly. The character of the contractual arrangement is such as to preclude explicitness as to quantity and prices. This is especially so where, as here, the product is new and untried and its potential worth and market value and the cost of manufacture and distribution are unknown quantities. Such contracts have the requisite mutual assent and consideration. They are not comparable to the ordinary executory agreement to buy and sell goods. Bendix Home Appliances, Inc., v. Radio Accessories Co., 8 Cir., 129 F.2d 177; Jay Dreher Corp. v. Delco Appliance Corp., 2 Cir., 93 F.2d 275; Ken-Rad Corp. v. R. C. Bohannan, Inc., 6 Cir., 80 F.2d 251; Marrinan Medical Supply v. Ft. Dodge Serum Co., 8 Cir., 47 F.2d 458; Schnerb v. Caterpillar Tractor Co., 2 Cir., 43 F.2d 920; Moon Motor Car Company of New York v. Moon Motor Car Co. Inc., 2 Cir., 29 F.2d 3; Williston on Contracts (Rev.Ed.) section 1027–A.

"Contracts of this category are to be given a practical interpretation that will effectuate and not defeat the common intention in an area of conventional action that, due to unpredictable market conditions, production factors, and so on, ordinarily does not permit of greater certainty and definiteness in the particulars mentioned."

Mantell v. International Plastic Harmonica Corp., 1947, 141 N.J.Eq. 379, 387, 55 A.2d 250, 256, 173 A.L.R. 1185.

■■ The Mantell case is not unlike the instant case. There the agreement did not fix either the price of the goods or a standard for the measurement of the price. Yet the court enforced the agreement.

In U. S. v. Swift, 1926, 270 U.S. 124, 139, 46 S.Ct. 308, 70 L.Ed. 497, the Su-

preme Court held valid as a contract an agreement in which the price was left to subsequent adjustment. The Court noted that under the particular facts there (and here) involved, it would be difficult to fix a price in the contract in advance of performance and therefore held that a reasonable price was presumed to have been intended. See also Abrams v. George E. Keith Co., 3 Cir., 1929, 30 F.2d 90. Prosser, Open Price in Contracts for the Sale of Goods, 16 Minn.L.R. 733 (1932).

Warner conceded at oral argument that it intended to enter into a binding contract. When the parties intend to enter into a binding contract the courts should strive to assist this intention. Corbin on Contracts, § 97. Loewus & Co. v. Vischia, 1949, 2 N.J. 54, 58, 65 A.2d 604.

The provisions of the Uniform Sales Act fortify the conclusion that this agreement is a valid contract. N.J.S.A. 46:30–15 provides, in pertinent part:

> "(1) The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed, or it may be determined by the course of dealing between the parties.

> \* \* \* \* \* \*

> "(4) Where the price is not determined in accordance with the foregoing provisions the buyer must pay a reasonable price. \* \* \*"

It has been said that there has never been a satisfactory construction of this section, in regard to contracts in which the price is left for future agreement. Prosser, Open Price in Contracts for the Sale of Goods, 16 Minn.L.R. 733, 1932. A sensible construction would be that the words " \* \* \* it may be determined by the course of dealing between the parties" mean that if the parties subsequently agree upon a price, the contract should be enforced. Prosser, supra.

As is shown by the undisputed affidavit filed on behalf of Vulco, the parties did subsequently agree upon prices, and have never had any difficulty or disagreement concerning them. In fact, the present controversy apparently is not caused by any question of price. Warner is attempting to escape the binding force of an agreement which it entered into with the full intention of making a contract. Warner's attempted justification is the legal technicality that the provisions of the agreement as to price are too vague to permit the existence of a contract. Nevertheless, this allegedly "vague" provision has been satisfactorily applied by the parties for a period of three years. It is the duty of the Court to effectuate the intentions of business men, not to block them, and that is the intent of the above provision of the Uniform Sales Act.

■■ Warner's second attack upon this agreement centers on the allegedly illusory nature of Warner's promise to order such windows as Vulco may require. It is well established that requirement contracts are valid as long as the party has establishable requirements. Ferenczi v. National Sulphur Co., 1933, 166 A. 477, 11 N.J.Misc. 262; Loewus & Co. v. Vischia, supra; 1 Williston on Contracts (Rev.Ed.) Sec. 104A. This is particularly true in an exclusive sales agency contract where it is in the interest of the distributor to order as many of the products of the manufacturer as he can possibly sell.

> "Often a sales agency contract does not fix the amount of goods or the number of articles that the agent must take or sell. The exigencies of business often require they must be left flexible so that it may vary with general business considerations, and with manufacturing needs and difficulties. Such a contract usually contains various subsidiary promises on both sides. Such subsidiary promises are sufficient consideration for any return promises, so that the contract should not be held void for lack of 'mutuality'. Promises by the agent to advertise and promote sales with due diligence and by the manufacturer to supply goods to any reasonable

128

extent as ordered are readily to be found by implication." 1 Corbin on Contracts, Sec. 155 (1950).

Accord Wood v. Lucy-Lady Duff Gordon, 1917, 222 N.Y. 88, 118 N.E. 214.

The result in Loewus v. Vischia, supra, was created by the peculiar facts there involved, as distinguished from the facts in the case at bar. Here, Vulco's promise as agent to promote sales is readily implied from the provision in Section 5 of the contract that it is to receive a rebate for the cost of such promotional advertisement. Warner's promise to supply goods to any reasonable extent is readily implied from the contract provisions to supply Vulco with such quantities as it shall "from time to time require".

Since the agreement counted on is a valid contract, defendant's motion for summary judgment on Count 1 of the complaint, and for its dismissal, will be denied.