NATHAN SILVERSTEIN AND JULIAN SILVERSTEIN, TRAD-
ING AS SILCO CIGARETTE SERVICE, PLAINTIFFS-RE-
SPONDENTS, v. PATRICK KEANE, DEFENDANT-APPEL-
LANT.

NATHAN SILVERSTEIN AND JULIAN SILVERSTEIN, TRAD-
ING AS SILCO CIGARETTE SERVICE, PLAINTIFFS-RE-
SPONDENTS, v. FRANKIE NELSON, INDIVIDUALLY
AND TRADING AS NELSON'S MARINE GRILL, DEFEND-
ANT-APPELLANT.

NATHAN SILVERSTEIN AND JULIAN SILVERSTEIN, TRAD-
ING AS SILCO CIGARETTE SERVICE, PLAINTIFFS-RE-
SPONDENTS, v. CHARLES ROVEGNO AND FRANK
PALMIERI, INDIVIDUALLY AND TRADING AS ROVEGNO
& PALMIERI, DEFENDANTS-APPELLANTS.

NATHAN SILVERSTEIN AND JULIAN SILVERSTEIN, TRAD-
ING AS SILCO CIGARETTE SERVICE, PLAINTIFFS-RE-
SPONDENTS, v. ANTHONY PALMIERI, DEFENDANT-AP-
PELLANT.

Argued May 16, 1955—Decided June 6, 1955.

*Mr. Abraham J. Slurzberg* argued the cause for the appellants (*Mr. Francis P. Morley,* attorney for defendant-appellant Patrick Keane; *Messrs. Gottlieb & Gottlieb,* attorneys for defendants-appellants Frankie Nelson and Anthony Palmieri; *Mr. Irving I. Vogelman,* attorney for defendants-appellants Charles Rovegno and Frank Palmieri; *Mr. Irving I. Vogelman,* of counsel).

*Mr. Maurice C. Brigadier* argued the cause for the respondents (*Mr. Sol Schulman,* attorney; *Mr. Seymour Margulies,* on the brief).

The opinion of the court was delivered by

BURLING, J.   There is a civil action grounded in breach of a specific contract which is the gist of each of the four actions involved in these consolidated appeals.   The plaintiffs, Nathan Silverstein and Julian Silverstein, trading as Silco Cigarette Service, initiated the actions by individual com-

plaints filed in the Hudson County District Court, against the defendants, respectively, Patrick Keane, Frankie Nelson, individually and trading as Nelson's Marine Grill; Charles Rovegno and Frank Palmieri, individually and trading as Rovegno and Palmieri; and Anthony Palmieri. The Hudson County District Court without a jury entered judgment of dismissal on motion of the respective defendants made before the close of the reception of evidence on the plaintiffs' cases. The plaintiffs' appeals were consolidated for argument in the Superior Court, Appellate Division, which reversed the judgments and remanded the several matters for new trial. *Silverstein v. Keane*, 35 *N. J. Super.* 303 (1954). This court allowed certification in the present matters on the defendants' joint petition therefor, *Silverstein v. Keane*, 17 *N. J.* 252 (1955).

The alleged agreements upon which the plaintiffs instituted suit in the four matters *sub judice* are substantially similar. As an example we quote the text of the Keane agreement:

"In consideration of $1.00 and for other good and valuable consideration, lawful money of the United States of America to me/us in hand paid, receipt of which is hereby acknowledged, I/we do hereby lease to the Silco Cigarette Service of Hudson County, New Jersey, and the said Silco Cigarette Service does hereby rent so much space of the premises owned and/or operated by me/us, as is necessary to permit the installation of a cigarette vending machine or machines for the sale of cigarettes, which premises known as Keane Tavern, Pat Keane, and located at No. 304 River St. Hob. New Jersey; the said cigarette vending machine or machines to remain upon the premises for the sale of cigarettes exclusively for a period of three years, and during that time I/we agree to and with the Silco Cigarette Service, that no other cigarette vending machines except those owned by the Silco Cigarette Service shall be permitted on or within the premises.

The term of this Agreement is for three years from the date hereof, and thereafter for a like period until this Agreement is cancelled by either party by notice in writing given to the other thirty (30) days before the annual termination date.

I/we also agree not to sell or allow to be sold any cigarettes in any other manner on the premises, either directly or indirectly, for the period of this lease, excepting through machines owned and operated by the Silco Cigarette Service and I/we do further agree that the said machines above referred to are not and shall not be subject to any liens or mortgages covering the premises, and that the

said Silco Cigarette Service may remove the machine or machines from the above mentioned premises at any time, day or night, without obligation or liability.

As a further consideration for this letting, the Silco Cigarette Service agrees to pay any and all commissions for sales of cigarettes through the said machines and the said commissions earned are to be paid directly to the lessor herein every month during the running of this Agreement.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals this 23 day of Jan. 1953."

In addition the Nelson agreement contained the following language:

"If I/we breach this contract by violation of any provisions agreed to, I/we agree to pay Silco liquidated damages in an amount of two and one half times the average monthly commission usually received by lessor as determined by averaging the last six monthly commission payments, or if there are less than six, by averaging the exact number previously paid for the balance of the unexpired term."

Each agreement bore a different date, but the dates have not become material at the present stage of the cases.

It was stipulated at the trial that the legal issues were the same in each case and the issue of damages was reserved by the trial court pending the disposition of the defendants' motions for dismissal on the issues of law. See *R. R.* 4:42-2(*b*). As is apparent, the respective agreements contained no specification of the rate of commission to be paid by the plaintiffs to the defendants respectively. The trial court sustained the defendants' objections, asserted on the ground that the rate of commission could not be shown by parol evidence, to the plaintiffs' offers of proof. See *R. R.* 4:44-3.

Upon the defendants' motions for dismissal prior to completion of the plaintiffs' case the trial court ruled that the respective agreements were terminable at will by the plaintiffs and lacked mutuality of obligation. The motions for judgment of dismissal were granted. The resulting judgments were reversed by the Superior Court, Appellate Division, as hereinbefore noted, on the determination that parol evidence was admissible to demonstrate the rate of commission under the respective agreements involved in these actions, and on

the conclusion of law that the agreements were mutually obligatory upon the respective parties thereto.

The questions involved on these appeals include: (a) whether parol evidence is admissible to supply the rate of commission to be paid by the plaintiffs to the respective defendants under these agreements, within the statute of frauds and the parol evidence rule; and (b) whether the respective agreements evince mutuality of obligation.

## I. PAROL EVIDENCE AND THE STATUTE OF FRAUDS

The plaintiffs contend that the absence of a stated rate of commission is not destructive of the agreements involved in these actions. The plaintiffs rely, in part, upon the provision of the Statute of Frauds, *R. S.* 25:1–8, which reads as follows:

"The consideration of any promise, contract or agreement required to be put in writing, by sections 25:1–1 to 25:1–7 of this title, need not be set forth or expressed in such writing, but may be proved by any other legal evidence."

The statutory exception contained in *R. S.* 25:1–8, *supra,* has existed since 1874 and it has been decided that the cases which previously hold the expression of consideration in writing in a contract a requisite of a valid contract under the Statute of Frauds must be read in the light thereof. *Nibert v. Baghurst,* 47 *N. J. Eq.* 201, 208 (*Ch.* 1890). The *Nibert* case, *supra,* has been cited by the former Court of Errors and Appeals as authority for the holding that by the express terms of the Statute of Frauds consideration need not be stated in the memorandum or writing purporting to contain the terms of agreement. *Cavanna v. Brooks,* 97 *N. J. Eq.* 329, 334 (*E. & A.* 1925).

The question whether a rate of commission may be proved absent specific expression in the writing is in itself of substantially novel impression in New Jersey. The pertinent decisions however direct the conclusion that under the circumstances of this case the *rate* of commission need

not be set forth in the agreement since the type of consideration is expressed.

In *Atlantic Northern Airlines, Inc., v. Schwimmer*, 12 *N. J.* 293, 305 (1953), this court held:

"Where the statement of a consideration is in itself 'an operative part of a contractual act,—as when in the same writing the parties set out their mutual promises as considerations for each other,' the word ' "consideration" signifies a term of the contract, and hence the writing alone can be examined'; a recital of consideration received is, like other admissions, disputable so far as concerns the thing actually received, but 'so far as the terms of a contractual act are involved, the writing must control, whether it uses the term "consideration" or not, and therefore the terms are not disputable.' *Wigmore on Evidence, section* 2433."

■ Further in the *Atlantic Northern Airlines, Inc.*, case, *supra*, we approved the expression of the law in *Baum v. Lynn*, 72 *Miss.* 932, 18 *So.* 428, 430, 30 *L. R. A.* 441 (*Sup. Ct.* 1895), that (see 12 *N. J.*, at page 306):

" 'The true rule is that a consideration recited to have been paid *or contracted for* may be varied by parol, while the terms of a contract may not be, though the contract they disclose may be the consideration on which the act or obligation of the other party rests.' " (Emphasis supplied.)

In the present matters the agreements expressed consideration in the following terms:

"In consideration of $1.00 and for other good and valuable consideration   *   *   *

*    *    *    *    *    *    *    *

As a further consideration   *   *   *, the Silco Cigarette Service agrees to pay any and all commissions for sales   *   *   *."

■ The true consideration may be shown provided that it is not varied or enlarged in the sense of increasing the duty to be performed and the amount of consideration may be shown by parol evidence. *Dieckman v. Walser*, 114 *N. J. Eq.* 382, 390 (*E. & A.* 1933). In the *Dieckman* case, *supra*, Mr. Justice Heher said (114 *N. J. Eq.*, at *page* 390):

"\* \* \* It cannot be claimed that such evidence varied or changed the terms of the consideration specified in the deed, for it is expressly stated to be 'One dollar and other valuable considerations' \* \* \*."

It has been said in respect to analogous writings to those involved herein that price "is an essential term," but that "exclusive sales-agency contracts differ from ordinary sales contracts in that here both the principal and the sales agent pass on the agency price to the third-party purchaser, to be paid by him, plus the agent's commission, as the final purchase price. The agent's only interest in the price to be fixed is in relation to its effect upon his ability to make sales; the profit to him will be the same whatever the price finally agreed upon at which the article is to be sold to the public. \* \* \*" 1954 *Annual Survey of American Law, Contracts*, 30 *N. Y. U. L. Rev.* (1955) 521, 522. It has been held that agreement on price is not an essential in the granting of a sales-agency franchise. *Laveson v. Warner Mfg. Corp.*, 117 *F. Supp.* 124 (*D. C. N. J.* 1953).

The philosophy of the law in this respect has been expressed in 3 *Williston on Contracts* (*rev. ed.* 1936), *sec.* 642, *p.* 1843, as follows:

"When the writing in question is a unilateral conveyance, release, or promise, it may be shown that the consideration given by the grantee or promisee therefor was wholly or partly a parol promise, if the parol promise is in no way inconsistent with or contradictory of the written promise \* \* \*."

This philosophy was applied in *Hayes v. Jackson*, 159 *Mass.* 451, 34 *N. E.* 683 (*Sup. Jud. Ct.* 1893), as an interpretation of a section of the Massachusetts Statute of Frauds comparable to *R. S.* 25:1–8, *supra*, in a case where the consideration was incompletely expressed. The subsequent decision of the Massachusetts Court of last resort, in *Bogigian v. Booklovers' Library*, 193 *Mass.* 444, 79 *N. E.* 769, 770 (*Sup. Jud. Ct.* 1907), limited the rule expressed in the *Hayes* case, *supra*, holding that it "would be an extension of the doctrine" of the *Hayes* case, *supra*, to "hold that 'considera-

tion' means price," insofar as determination of the whole price is concerned.

Insofar as the parol evidence rule, independent of *R. S.* 25:1–8, *supra,* is concerned, it is settled that if it is apparent from the writing itself that something is left out to be supplied by extrinsic evidence, parol evidence is admissible therefor. *Ross v. Orr,* 3 *N. J.* 277, 282 (1949). *Cf.* 9 *Wigmore on Evidence* (3rd ed. 1940), sec. 2430. As hereinbefore stated, it has been held by the former Court of Errors and Appeals that where the nature of the consideration is sufficiently expressed the *amount* of consideration (*i. e.,* the rate) may be shown by parol evidence. *Dieckman v. Walser, supra* (114 *N. J. Eq.,* at *page* 390). *Cf.* 2 *Jones on Evidence* (4th ed. 1938), sec. 468, pp. 891–893. Compare *Jennings v. Pinto,* 5 *N. J.* 562, 570 (1950); *Meserve v. Traverso,* 119 *N. J. L.* 566, 569–570 (*E. & A.* 1938); *Restatement of the Law, Contracts* (1932), secs. 84, 207, 240; 2 *Corbin on Contracts* (1950), sec. 501.

The conclusions that the *rate* of commission under the circumstances of this case is not required to be in writing, by virtue of *R. S.* 25:1–8, *supra,* and may be supplied by parol evidence, finds further support in the legislative expression concerning real estate commissions. Express provision for the inclusion in the writing of the rate of commission is made in *R. S.* 25:1–9. *Cf. Hueth v. Stevenson,* 100 *N. J. L.* 1, 2–3 (*Sup. Ct.* 1924).

In connection with this subject matter, proof of price by parol evidence, a similarity to sales of goods cases is discerned. Although this is not included in the questions involved and is not, therefore, involved in the disposition of these appeals, it bears comparison herein. In respect to price the Uniform Sale of Goods Law provides that the price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed, or may be determined by the course of dealing between the parties. *R. S.* 46:30–15. *Cf.* The Uniform Sales Act, sec. 9, I *U. L. A.,* sec. 9. It has been held that the price under the Uniform Sale of Goods Law may be fixed by parol evidence. *Mantell v. International*

*Plastic Harmonica Corp.*, 141 *N. J. Eq.* 379, 387–389 (*E. & A.* 1947). *Cf. R. S.* 46:30–9; I *U. L. A., sec.* 3; *Shafford v. Otto Sales Co., Inc.,* 119 *Cal. App. 2d* 849, 260 *P. 2d* 269 (*D. Ct. App.* 1953); *A. M. Webb & Co. v. Robert P. Miller Co.,* 157 *F. 2d* 865 (3 *Cir.,* 1946); *Gibson v. De La Salle Institute,* 66 *Cal. App. 2d* 609, 152 *P. 2d* 774 (*D. Ct. App.* 1944); *Deep Rock Oil Co. v. Derouin,* 194 *Wis.* 369, 216 *N. W.* 505 (*Sup. Ct.* 1927). See also *McCormick on Evidence* (1954), *sec.* 212, *pp.* 432–433. Compare *Meserve v. Traverso, supra.*

## II. Mutuality of Obligation

The defendants contended that the agreements contained no obligation on the part of the plaintiffs to keep the vending machine or machines on the defendants' premises, no obligation to maintain an adequate stock, or any stock, of cigarettes therein, and no obligation to service the machine or machines.

The general rule of construction of contracts pertinent to these questions involved is that it will be presumed that the parties thereto intended to make a binding and enforceable obligation and as between two equally reasonable constructions the court should adopt the one which makes the contract valid as opposed to one reaching a contrary result. *G. Loewus & Co., Inc., v. Vischia,* 2 *N. J.* 54, 58 (1949).

The plaintiffs concede that there is, on the face of the agreements, no written provision requiring the plaintiffs to keep the machines stocked or serviced. The agreements require the machines to be kept on the premises during the term of the agreement, require commissions to be paid on sales of cigarettes therefrom and permit removal of the machines by the plaintiffs, as well as prohibiting the defendants from making cigarette sales by any other means or method. It is in these provisions that the Superior Court, Appellate Division, found the agreements instinct with obligation upon the plaintiffs to maintain, stock and service the machines.

The phraseology used in the agreements clearly imposes the obligation to keep the vending machines stocked and

serviced. " ' * * * (I)f it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. * * *' " *Atlantic City v. Farmers, &c., Co.*, 96 *N. J. L.* 504, 508 (*E. & A.* 1921). *Cf. Wood v. Lucy, Lady Duff Gordon*, 222 *N. Y.* 88, 118 *N. E.* 214 (*Ct. App.* 1917), reargument denied 222 *N. Y.* 643, 118 *N. E.* 1082 (*Ct. App.* 1918). In the *Wood* case, *supra,* the emphasis of the decision of the New York Court of Appeals was placed on the exclusive agency taken by the plaintiff, as a clear indication of the obligation of the plaintiff to perform. Exclusivity is a paramount feature of the agreements *sub judice,* and coupled with the other terms of the agreements involved herein demands application of the rule of correlative obligation. Compare Arthur L. Corbin, "Cardozo and the Law of Contracts," 39 *Col. L. Rev.* (1939), 56, 57 *et seq.*

Percentage lease agreements, which are analogous to the agreements involved in the actions under review, are "mainly used where location of the property is a very important part of its value," but "it is obvious that generally the lessor's return will also depend upon the ability and energy of the lessee." I *American Law of Property* (1952), *sec.* 3.66, *p.* 321. Covenants to occupy and use the property and to use reasonable diligence to operate the business in a manner productive of profits or receipts have been implied in percentage leases. *Eg., Seggebruch v. Stosor*, 309 *Ill. App.* 385, 33 *N. E.* 2d 159, 161 (*App. Ct.* 1941). The implication of an obligation from the terms of the agreement considering what was written in the light of the attendant circumstances and conditions is a settled principle in New Jersey law. See *Casriel v. King*, 2 *N. J.* 45, 51–53 (1949). *Cf. William Berland Realty Co. v. Hahne & Co.*, 26 *N. J. Super.* 477, 485–489 (*Ch. Div.* 1953), modified 29 *N. J. Super.* 316 (*App. Div.* 1954). *Cf. Zone Co. v. Service Transportation Co., Inc.*, 137 *N. J. L.* 112, 117–118 (*Sup. Ct.* 1948).

In the *Seggebruch* case, *supra,* the Illinois appellate court premised its decision in part upon the principle that " 'the law is a silent factor in every contract.' " (33 *N. E. 2d,* at *page* 161.)   Parties in New Jersey are likewise presumed to have contracted with reference to the existing law. *Mantell v. International Plastics Harmonica Corp., supra* (141 *N. J. Eq.,* at *page* 387).   *Cf. Contracts—Contract Implied in Fact, etc.,* 53 *Harv. L. Rev.* (1940) 1203–1204.   Compare *Percoff v. Solomon,* 259 *Ala.* 482, 67 *So. 2d* 31, 38 *A. L. R. 2d* 1100 (*Sup. Ct.* 1953) ; *Annotation,* 38 *A. L. R. 2d* 1113 *et seq.*

In the present matter we are in accord with the application of the correlative obligation principles made in this case by the Superior Court, Appellate Division.   In addition, a fair reading of the clause permitting the plaintiffs to remove the vending machines from the defendants' premises buttresses the implication that the plaintiffs assumed the obligation to maintain and service.

The defendants contended on these appeals that the clause of the agreements authorizing the plaintiffs to remove the vending machines from the defendants' premises was a provision to terminate the contracts at will and therefore no recovery may be had thereunder for breach.   We are in accord with the view expressed by the Superior Court, Appellate Division, as to the effect of this provision of the agreements.   That is, the machine removal clause does not, upon a reading of the whole writing in the light of the attendant circumstances of the parties, authorize termination of the plaintiffs' obligations at will.

### Conclusion

For the reasons hereinbefore expressed the judgments of the Superior Court, Appellate Division, are affirmed.

*For affirmance*—Chief Justice Vanderbilt, and Justices Oliphant, Burling, Jacobs and Brennan—5.

*For reversal*—Justice Heher—1.