**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3018-18T1
          A-3827-18T1
          A-4524-18T1

ALLSTATE LENDING GROUP,
INC.,

      Plaintiff-Respondent,

v.

THE GRAN CENTURIONS, INC.,
and UNION COUNTY CAPITAL,
LLC,

      Defendants-Appellants,

and

GARRY'S CATERING, LLC and
GARRY RUANE,

      Defendants-Respondents.

_____

THOMAS BOROWSKI, MELISSA
EISEN, SAMUEL BOROWSKI,
ITALSKI, LLC, UNION COUNTY
CAPITAL, LLC and THE GRAN
CENTURIONS, INC.,

Plaintiffs-Appellants,

v.

MICHAEL SCANNELL, individually,
and ALLSTATE LENDING GROUP,
INC.,

    Defendants-Respondents.
_____

            Argued telephonically May 4, 2020 –
            Decided June 23, 2020

            Before Judges Messano, Vernoia and Susswein.

            On appeal from the Superior Court of New Jersey,
            Chancery Division and Law Division, Union County,
            Docket Nos. C-000145-18 and L-3596-18.

            Richard A. Grodeck argued the cause for appellants in
            A-3018-18 and A-4524-18 and respondents in A-3827-
            18 (Piro, Zinna, Cifelli, Paris & Genitempo, LLC,
            attorneys; Richard A. Grodeck, on the briefs).

            Sean Mack argued the cause for respondents Allstate
            Lending Group, Inc. and Michael Scannell (Pashman
            Stein Walder Hayden, PC, attorneys; Sean Mack and
            Howard Pashman, on the briefs).

            Barbara Schwartz argued the cause for respondents
            Garry's Catering, LLC and Garry Ruane in A-3018-18
            and appellants in A-3827-18 (Law Office of Paul
            Swanicke, attorneys; Barbara Schwartz and Paul
            Swanicke, on the brief).

PER CURIAM

These three appeals arise from orders entered in two actions, one in the Law Division and the other in the Chancery Division, involving common parties and claims over the funding and payment of three loans totaling $2.65 million. We scheduled the appeals back-to-back-to-back and now consolidate them for purpose of issuing a single opinion. Resolution of the three appeals is centered on a common issue: did the Law Division and Chancery Division correctly determine claims asserted in the respective complaints are subject to binding arbitration pursuant to arbitration agreements executed in connection with the three loans? Based on our review of the records presented in light of the applicable law, we conclude the courts correctly found the pertinent claims are subject to the parties' arbitration agreements, and we affirm the challenged orders.

I.

Prior to addressing the orders from which the appeals are taken, we identify the parties and summarize the proceedings between them to provide context for our discussion of the legal issues presented. The Gran Centurions, Inc. (TGC) is a non-profit corporation, the ownership of which is represented by sixty-eight bonds. TGC owns a restaurant, a banquet facility, and real property in Clark.

3

Garry's Catering, LLC (Garry's) is party to a lease with TGC pursuant to which it operates a banquet facility at TGC's Clark property. Garry Ruane (Ruane) is Garry's sole member, and he is also a TGC bondholder. Under its lease with TGC, Garry's had a right of first refusal to purchase TGC and its Clark property if they were offered for sale.

In October 2016, Garry's filed a Chancery Division action (the 2016 action) against TGC challenging a proposed sale of TGC bonds to Union County Capital, LLC (UCC). Garry's asserted the proposed sale of the bonds violated its right of first refusal under its lease with TGC.

In 2017, Ruane filed a Chancery Division action (the 2017 action) against Thomas Borowski (Borowski) and UCC, asserting Borowski was a principal in UCC, and the "self-appointed [p]resident and/or [c]hairperson of [the] Board of Trustees of TGC." The complaint alleged Borowski and UCC purchased the bonds of certain TGC bondholders in violation of TGC's by-laws and had taken various actions on TGC's behalf without proper legal authority. In particular, the complaint alleged Borowski and UCC acted without proper legal authority on TGC's behalf to borrow $1.65 million from Allstate Lending Group, Inc. (Allstate) and mortgage TGC's Clark property to Allstate to secure payment of the loan.

On November 16, 2017, the 2016 and 2017 actions were settled. Garry's and Ruane entered into a "MUTUAL RELEASE AND SETTLEMENT AGREEMENT" with TGC, UCC, and Borowski, in which the parties released each other from any and all claims that were made, or could have been made, in the 2016 and 2017 actions and through the date of the agreement.

The $1.65 million loan Allstate made to TGC, which Ruane challenged in the 2017 litigation, was one of three loans Allstate made related to TGC and its property. The proceeds from the three loans were intended to finance the purchase of TGC bonds and TGC's real property in Clark by Borowski and UCC. Disputes concerning the three loans, and the ensuing litigation, give rise to the three pending appeals.

On December 6, 2016, Allstate loaned $500,000 to Borowski and $500,000 to Italski, LLC (Italski). Borowski executed separate $500,000 promissory notes on his own behalf and on behalf of Italski. To secure payment of the $500,000 loan to Borowski, he executed a mortgage in Allstate's favor on property located in Linden. The $500,000 loan to Italski was secured by a mortgage on property in Howell that Borowski executed on Italski's behalf.

Five weeks later, Allstate loaned $1.65 million to TGC. Borowski executed a promissory note in that amount on behalf of TGC, as well as a

mortgage in Allstate's favor on TGC's property in Clark. The mortgage secured the performance of TGC's obligations under the note.

In connection with each of the loans, Borowski executed identical "ARBITRATION AGREEMENTS" on his own behalf and on behalf of Italski and TGC, respectively. Each agreement stated as follows:

> Arbitration is a process by which both parties to a dispute agree to submit the matter to an arbitrator who has expertise in the area and to abide by the arbitrator's decision. There is no right to a trial by jury and the arbitrator's legal and factual determinations are generally not subject to appellate review. Arbitration rules of evidence and procedure are often less formal and less rigid than the rules which apply in court. Arbitration usually results in a decision much more quickly than proceedings in court, and the attorneys' fees and other costs incurred by both sides may be substantially less. You are free to discuss the advisability of arbitration with us, or with your own independent counsel or any of your other advisors, and to ask any questions which you may have. Both the United States Supreme Court and the California Supreme Court have endorsed arbitration as an accepted and favored method of resolving disputes, because it is economical and expeditious.
>
> By signing this engagement agreement, we agree that, in the event of any dispute or claim arising out of or relating to this agreement, our relationship, our charges, or our services, SUCH DISPUTE OR CLAIM SHALL BE RESOLVED BY SUBMISSION TO FINAL AND BINDING ARBITRATION IN LOS ANGELES COUNTY, CALIFORNIA BEFORE A RETIRED JUDGE OR JUSTICE. BY AGREEING TO

6

ARBITRATE, YOU WAIVE ANY RIGHT YOU HAVE TO A COURT OR JURY TRIAL. If we are unable to mutually agree on a retired judge or justice, then each side will name one retired judge or justice and the two named persons will select a neutral judge or justice who will act as the sole arbitrator. The fees of the arbitrator will be paid equally by both the Firm and you.

Following execution of the notes, mortgages, and arbitration agreements for the three loans, disputes arose between Allstate, as the lender and mortgagee, and Borowski, Italski, and TGC, as the respective borrowers and mortgagors. It appears the disputes concerned Allstate's funding of the loans, with Borowski, Italski, and TGC claiming Allstate deducted improperly calculated prepaid interest from the respective loan proceeds and otherwise improperly delayed making the loan payouts to the respective borrowers.

As a result of the disputes, separate actions in the Law Division and Chancery Division were commenced. Those actions resulted in the entry of the orders from which the pending appeals were taken. We briefly describe in turn each action and the orders at issue in the pending appeals.

The Chancery Division Action (A-3018-18 and A-3827-18)

In October 2018, Allstate filed a verified complaint in the Chancery Division against TGC; UCC, "which owns [TGC]"; and Garry's, which Allstate alleged "is the primary tenant at [TGC's] [p]roperty." The complaint alleged

7

TGC defaulted on the $1.65 million note to Allstate, and Allstate had served TGC with a demand for arbitration over the matters in dispute. Allstate requested the court appoint a receiver to collect rents and to maintain TGC's property pending resolution of the underlying disputes between Allstate and TGC in arbitration.[1] No claims were asserted against Garry's; it was named as a defendant because it was obligated to pay rent pursuant to its lease with TGC.

In November 2018, Allstate moved for an order compelling TGC to proceed to arbitration. TGC opposed the motion, arguing the arbitration agreement was unenforceable because it was not the product of mutual assent as to the arbitral forum and the rules to be applied during the arbitration. Garry's did not oppose Allstate's motion to compel TGC to proceed to arbitration, and Garry's counsel did not participate in the two hearings the court held on the motion. In late November, Garry's filed an order to show cause, an answer to the complaint, and cross-claims and a third-party complaint against Borowski, UCC, TGC, and Borowski's wife and father.

At a December 21, 2018 hearing, the court denied Allstate's motion to compel arbitration, finding the parties to the arbitration agreements did not have "a meeting of the minds," but it also stated it would issue a written opinion

---

[1] The court entered a January 4, 2019 order appointing a rent receiver.

setting forth its statement of reasons. On December 31, 2018, the court entered an order granting Ruane leave to intervene and denying Garry's and Ruane's request for appointment of a fiscal agent and conservator of TGC.

A few days later, the court requested additional briefing and argument on issues related to Allstate's motion to compel arbitration. Following the submission of additional briefs on behalf of Allstate and TGC, and an opposition brief filed on behalf of Garry's, the court heard additional argument on Allstate's motion to compel arbitration.

The Chancery Division judge subsequently issued a detailed March 1, 2019 written opinion finding the arbitration agreement between TGC and Allstate enforceable and TGC was obligated to arbitrate Allstate's claims. On March 1, 2019, the court also entered an order directing TGC and Allstate to proceed to arbitration.[2] The court did not order Garry's to arbitrate any of the claims asserted in its cross-claims or third-party complaint against TGC, Borowski, UCC, or Borowski's wife or father.

---

[2] The order includes a typographical error. It includes the following, "IT IS on this 1st day of March, 2018," but the order accompanied the court's March 1, 2019 written opinion and is marked filed by the court on "March 1, 2019."

The court subsequently entered an order pursuant to R. 2:9-5(c) staying the arbitration pending TGC's appeal from the March 1, 2019 order compelling arbitration. TGC's appeal from the March 1, 2019 order in A-3018-18.

The court later entered an April 12, 2019 order dismissing the case because the "parties [were] going to arbitration." Garry's appealed from the court's March 1, 2019 and April 12, 2019 orders, and its appeal is pending in A-3827-18.

In a July 31, 2019 order, we granted in part and denied in part Garry's motion for a remand, vacation of the settlement of the 2016 and 2017 actions to which Garry's was a party, and consolidation of those actions with the pending Chancery Division case. We remanded to the Chancery Division for reinstatement of the complaint and other pleadings to allow for the filing of responsive pleadings and discovery. Our order effectively reversed and vacated the court's April 12, 2019 dismissing the Chancery Division action. We directed that the matter "may proceed as to all other issues and parties not subject to the arbitration order."

<u>The Law Division Action (A-4524-18)</u>

In December 2018, Borowski, TGC, Italski, and UCC, filed a complaint in the Law Division against Allstate and its principal Michael Scannell.[3] The complaint asserted the following claims arising from the three loans: an accounting for each of the loans; breach of contract; breach of the covenant of good faith and fair dealing; breach of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -224; breach of the "Consumer Finance Licensing Act"; intentional infliction of emotional distress; tortious interference with contract rights; and violations of the New Jersey "Civil RICO" statute, N.J.S.A. 2C:4-2.[4] The complaint also sought a declaratory judgment that the arbitration agreements executed as part of the three loans were "unenforceable as a matter of law."

---

[3] It appears the action was commenced with the filing of a complaint, which was amended prior to the filing of any responsive pleading. The complaint to which we refer is the amended complaint. We note that Borowski's wife and father were also plaintiffs in the action. We do not address the allegations pertinent to them because they are not parties to the arbitration agreements at issue on appeal; they were not ordered to participate in the arbitration; and they do not appeal from the court's orders at issue on appeal.

[4] The cause of action for violation of what Borowski, Italski, and TGC characterized as the "Consumer Finance Licensing Act" was later withdrawn at their request. Their complaint did not include a citation to the statute(s) they claimed comprise the purported act.

Allstate and Scannell moved to dismiss the complaint for lack of jurisdiction over Scannell and for failure to state a claim upon which relief may be granted, and, in the alternative, they moved for a "stay" of the action "in favor of arbitration." In a May 24, 2019 opinion issued from the bench, the Law Division judge determined Borowski's, Italski's and TGC's arbitration agreements with Allstate are binding and enforceable, and the claims asserted in the complaint are subject to the arbitration obligation.

In a June 13, 2019 order, the court granted in part and denied in part the motion. The court ordered that the claims asserted by Borowski, Italski and TGC against Allstate be determined in an arbitration proceeding initiated by Allstate. Borowski, Italski, and TGC appealed from the court's order. Their appeal is pending in A-4524-18.

The Pending Appeals

Parties appealing from orders compelling arbitration may appeal as of right because the orders are "deemed . . . final judgment[s] of the court for appeal purposes." R. 2:2-3(a)(3); see also R. 2:2-3(a)(1) (providing for appeals as of right from "final judgments of the Superior Court trial divisions"). Here, TGC, Borowski, and Italski appeal from the Law Division's June 13, 2019 order compelling arbitration of the claims involving Allstate, and TGC appeals from

the Chancery Division's March 1, 2019 order compelling arbitration, also of the claims involving Allstate.

Although Garry's is not subject to any orders compelling it to proceed in arbitration, it appeals from the Chancery Division's March 1, 2019 order compelling TGC to proceed to arbitration and the court's April 12, 2019 order dismissing the Chancery Division action that we effectively reversed in our July 31, 2019 order. As noted, our July 31, 2019 order reinstated the Chancery Division action and permitted the continued litigation of all claims, including Garry's, that are not subject to the court's order compelling arbitration.

## II.

We first consider the issues common to the orders compelling arbitration because they are properly presented as appeals from the final judgments embodied in the Chancery Division's March 1, 2019 order and the Law Division's June 13, 2019 order. The challenges to the orders are founded on identical grounds. TGC, Italski, and Borowski assert the arbitration agreements are unenforceable because they do not specify an arbitral forum; they do not encompass the claims asserted in the actions; and they do not include a waiver of the right to proceed in court on their statutory claims against Allstate. TGC, Italski, and Borowski claim the purported deficiencies in the arbitration

13

agreements establish there was no meeting of the minds between the respective parties and, as a result, the agreements are unenforceable.

We apply a de novo standard of review when construing an arbitration provision in a contract. Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016); Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 445-46 (2014). We apply the same de novo review when deciding whether a valid and enforceable arbitration agreement exists. Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). We owe "no special deference to the judge's determination of [the enforceability of an arbitration agreement]." Flanzman v. Jenny Craig, Inc., 456 N.J. Super. 613, 619 (App. Div. 2018), certif. granted, 237 N.J. 310 (2019).

Here, both federal and state laws governing arbitration agreements are applicable. The Federal Arbitration Act, 9 U.S.C. §§ 1 to 16, and the Uniform Arbitration Act, N.J.S.A. 2A:23B-1 to -36, favor arbitration of disputes. KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011); Roach v. BM Motoring, LLC, 228 N.J. 163, 173 (2017).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese, 219 N.J. at 442 (citing NAACP of Camden Cty. E. v. Foulke Mgmt.

Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Ibid. A legally enforceable agreement requires a "meeting of the minds." Ibid. (citing Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)).

TGC, Borowski, and Italski assert the arbitration agreements are unenforceable because they do not identify the arbitral forum. In Flanzman, we defined the arbitral forum "as the mechanism – or setting – that parties utilize to arbitrate their dispute." 456 N.J. Super. at 623. Here, the arbitration agreements clearly provide a mechanism and the setting for the arbitration of the parties' disputes. The agreements state the arbitrations will take place before a mutually agreed upon retired California judge or justice, and, where no mutual agreement is reached, each party will select one retired judge or justice and the two named persons select a neutral judge or justice who will act as the sole arbitrator. This provision defines the arbitral forum. As we explained in Flanzman, where the parties "agree that a dispute [will] be arbitrated by an arbitral institution, or an arbitrator or arbitrators, then that is the agreed upon forum." Ibid. (emphasis added).

TGC, Borowski, and Italski also assert there was no meeting of the minds, and therefore no enforceable contracts to arbitrate, because the arbitration

agreements do not define the rules by which the arbitrations will be conducted. They contend that although the agreements state the "rules of evidence and procedure are often less formal and less rigid than the rules which apply in court," the agreements do not sufficiently define the rules governing the arbitration proceedings. They claim the arbitration agreements are unenforceable because a binding agreement to arbitrate must define "both the rights that have been waived and the rights that have taken their place." Kleine v. Emeritus at Emerson, 445 N.J. Super. 545, 552-53 (App. Div. 2016).

TGC, Borowski, and Italski rely on our decision in Flanzman, where we considered the enforceability of a putative arbitration agreement that provided the claims and controversies between the parties were to be "settled by final and binding arbitration." 456 N.J. Super. at 618. The agreement did not provide for an arbitral forum; that is, the agreement did not define any mechanism or setting for the arbitration of the parties' dispute. Id. at 622.

We observed that "[s]electing an arbitral institution," such as the American Arbitration Association, as the arbitral forum "informs the parties, at a minimum, about that institution's general arbitration rules and procedures." Id. at 626. We noted that "[w]ithout knowing [that] basic information, parties

to an arbitration agreement will be unfamiliar with the rights that replaced judicial adjudication," and "will not reach a 'meeting of the minds.'" Ibid.

In Flanzman, we relied on Oasis Health & Rehabilitation of Yazoo City, LLC v. Smith, where the court found an arbitration agreement enforceable because it included "an agreed method for selection" of the arbitrator. 42 F. Supp. 3d 821, 826 (S.D. Miss. 2014). We observed that in Oasis, by providing a method for the selection of the arbitrator, the parties "reached a 'meeting of the minds' as to what rights replaced the right to a jury trial." Flanzman, 456 N.J. Super. at 629. We further found an agreement adequately reflects a meeting of the minds about what replaced the rights the parties have given up when it provides for the selection of a neutral arbitrator or "permit[s] each party to pick an arbitrator and then those arbitrators . . . select [a] neutral arbitrator." Id. at 630. Here, the arbitration agreements provide the identical information.

In Flanzman, we were not required to address the precise issue presented here. Instead, we considered an arbitration agreement that "omitted any reference whatsoever to an arbitral forum," and we concluded that, as a result, the parties did not reach a meeting of the minds on the arbitral forum. 456 N.J. Super. at 622. As we have explained, the parties here expressly agreed upon an arbitral forum—a retired California judge or justice—in a manner supporting a

17

finding there was a meeting of the minds between TGC, Borowski, and Italski, respectively, and Allstate, as we defined the requirement in <u>Flanzman</u>.

In her written opinion, the Chancery Division judge rejected TGC's, Borowski's, and Italski's argument the arbitration agreements do not sufficiently define the rules and procedures governing the arbitration proceedings. The court found that, as a matter of law, the New Jersey Arbitration Act (the Act), N.J.S.A. 2A:23B-1 to -36, provides the arbitration procedures applicable under the agreements. We agree.

"In New Jersey, agreements to arbitrate made on or after January 1, 2003, are governed by the . . . Act." <u>Kimm v. Blisset, LLC</u>, 388 N.J. Super. 14, 28 (App. Div. 2006); <u>see also</u> N.J.S.A. 2A:23B-3 (stating the "act governs all agreements to arbitrate made on or after January 1, 2003").[5] The arbitration agreements between Allstate and TGC, Borowski, and Italski are governed by the Act's requirements because they were executed in 2016 and 2017. Indeed, none of the parties disputes the agreements are governed by the Act.

---

[5] The Act, however, does not apply to agreements to arbitrate "between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement." N.J.S.A. 2A:23B-3(a). This exception does not apply to the agreements between Allstate and TGC, Borowski, and Italski, respectively.

Our Supreme Court has explained the Act provides the procedural rules governing an arbitration proceeding where the parties' agreement does not provide otherwise. In <u>Kernahan v. Home Warranty Administrator of Florida, Inc.</u>, the Court stated that "[u]nless superseded by the parties' agreement, the . . . Act prescribes the rules governing the conduct of the [arbitration] proceeding." 236 N.J. 301, 324 (2019). Similarly, in <u>Fawzy v. Fawzy</u>, the Court observed the Act "recognizes the contractual nature of the arbitration remedy and sets forth the details of the arbitration procedure that will apply unless varied or waived by contract." 199 N.J. 456, 469 (2009).

In <u>Flanzman</u>, we recognized the parties are not required to "detail in the arbitration agreement the exact manner in which the arbitration proceeding will proceed" because, at least in part, N.J.S.A. 2A:23B-15(a) provides the arbitrator with discretion to decide the manner in which the arbitration will take place. 456 N.J. Super. at 626. In addition, and as noted, we also held that a general indication in the agreement "that one or more individuals will arbitrate the case," like that included in the agreements here, sufficiently "addresses the rights that replaced the right to judicial adjudication" to support a finding the parties had the meeting of the minds required for an enforceable contract. <u>Ibid.</u>

Parties to an arbitration agreement may waive or modify certain of the Act's requirements, see N.J.S.A. 2A:23B-4, but where they choose not to do so, the Act governs the arbitration proceeding, Kimm, 388 N.J. Super. at 28.  Here, the sophisticated commercial parties involved in these coordinated loans totaling $2.65 million opted not to waive the requirements of the Act, and, by doing so, they elected and agreed to be governed by the Act's provisions.  See ibid.  None of the parties contend they were unaware of the Act's provisions or its application to the arbitration agreements, nor could they because "the principle is well established that every person is conclusively presumed to know the law, statutory and otherwise[,]" and "parties are 'presumed to have contracted with reference to the existing law.'"  Widmer v. Twp. of Mahwah, 151 N.J. Super. 79, 83 (App. Div. 1977) (quoting Silverstein v. Keane, 19 N.J. 1, 13 (1955) (citations omitted)); see also Camden Bd. of Educ. v. Alexander, 181 N.J. 187, 195 (2004) (finding "[a]s a general matter, legislative and other regulatory enactments are 'a silent factor in every contract'" (quoting Silverstein, 19 N.J. at 13)).

TGC, Borowski, and Italski do not challenge the courts' conclusions the Act provides the procedures for the arbitration proceedings under the agreements.  Instead, they contend the Act's procedures are not sufficiently

comprehensive to adequately detail the rights replacing those given up by the parties by proceeding to arbitration. They argue the Act "simply confers upon an arbitrator the authority to conduct proceedings as the arbitrator deems appropriate 'for a fair and expeditious disposition of the proceeding[s].'" The argument ignores the Act's plain provisions, which provide detailed and defined authorizations, requirements, and limitations concerning the arbitration process.

The Act authorizes the arbitrator to "decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." N.J.S.A. 2A:23B-6(c). The Act also authorizes the arbitrator to "issue orders for provisional remedies, including interim awards, as the arbitrator finds necessary to protect the effectiveness of the arbitration proceeding and to promote the fair and expeditious resolution of the controversy, to the same extent and pursuant to the same conditions as if the controversy were the subject of a civil action." N.J.S.A. 2A:23B-8(b)(1). The Act further provides the process for initiating an arbitration, N.J.S.A. 2A:23B-9; for consolidation of separate arbitration proceedings, N.J.S.A. 2A:23B-10; and for the arbitrator's disclosure of information that might affect his or her impartiality, N.J.S.A. 2A:23B-12.

Moreover, the Act defines the arbitration process, N.J.S.A. 2A:23B-15, including a requirement that the arbitration be conducted "in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding," and authorizing the arbitrator to "hold conferences with the parties to the arbitration proceeding . . . and, among other matters, determine the admissibility, relevance, materiality, and weight of any evidence." N.J.S.A. 2A:23B-15(a). Under the Act, the arbitrator sets "a time and place" for the hearing, may adjourn the hearing, and "may hear and decide the controversy upon the evidence produced [by a party] although a party who was duly notified of the arbitration proceeding did not appear." N.J.S.A. 2A:23B-15(c). Parties to the arbitration have "a right to be heard, to present evidence . . ., to cross-examine witnesses appearing at the hearing," N.J.S.A. 2A:23B-15(d), and to "be represented by a lawyer," N.J.S.A. 2A:23B-16.

Further, an arbitrator may issue subpoenas for the attendance of witnesses and production of evidence at the hearing, which "shall be served in the manner for service of subpoenas in a civil action," and may permit the depositions of witnesses. N.J.S.A. 2A:23B-17(a) and (b). An arbitrator may also "permit such discovery as [he or she] decides is appropriate . . . taking into account the needs of the parties . . . and the desirability of making the proceeding fair, expeditious,

and cost effective." N.J.S.A. 2A:23B-17(c). The Act also requires the arbitrator "make a record of an award," sign or otherwise authenticate the award, and provide notice of the award to the parties within the time agreed to by the parties or established by the court. N.J.S.A. 2A:23B-19(a) and (b).

The Act further authorizes an arbitrator to "award punitive damages or other exemplary relief if such an award is authorized by law in a civil action involving the same claim," N.J.S.A. 2A:23B-21(a), reasonable attorney's fees and expenses "if such an award is authorized by law," N.J.S.A. 2A:23B-21(b), and all other remedies "the arbitrator considers just and appropriate under the circumstances," N.J.S.A. 2A:23B-21(c).

In sum, TGC's, Borowski's, and Italski's claim the Act does not sufficiently define the rules governing the arbitration process is without any foundation. The Act provides a comprehensive and detailed set of rules, requirements, and limitations concerning an arbitrator's duties and authority, as well as the manner in which an arbitration shall be conducted. The Act's provisions, which the parties acknowledge govern the arbitration agreements, sufficiently informed the parties about the "rules and procedures" applicable to the arbitrations such that the parties were "[]familiar with the rights that replaced judicial adjudication." Flanzman, 456 N.J. Super. at 626. We are therefore

convinced the courts correctly determined the arbitration agreements reflected a meeting of the minds resulting in binding contracts defining the arbitral forum and the procedural rights that replaced those TGC, Borowski, and Italski gave up by agreeing to forego litigation in court and proceed to arbitration.

We also reject TGC's, Borowski's, and Italski's argument the arbitration agreements do not include a clear waiver of their right to a jury trial. Their argument is undermined by the plain language of the agreements. Each agreement plainly states in bold language that "BY AGREEING TO ARBITRATE, YOU WAIVE ANY RIGHT YOU HAVE TO A COURT OR JURY TRIAL." The agreements further explain the differences between an arbitration and a court proceeding, and they note that "[t]here is no right to a trial by jury" in an arbitration. This language constitutes a "clear and unambiguous [statement] that the [person signing the agreement] is waiving [the] right to sue or go to court to secure relief," Atalese, 219 N.J. at 446, and, under the circumstances presented here, it resulted in an effective and enforceable waiver of TGC's, Borowski's, and Italski's respective rights to a jury trial.

TGC, Borowski, and Italski also argue that, even if he arbitration agreements are enforceable, they do not include a waiver of their respective

rights to prosecute in court their statutory claims under the CFA and New Jersey Civil RICO statute. They further assert their claims against Allstate and its principal Scannell for threats and intimidation do not fall within the arbitration obligation set forth in the agreements.

In the first instance, the court did not order that any claims against Scannell proceed to arbitration because he is not party to any of the arbitration agreements. In addition, the claims against Allstate, including the statutory and common laws, must be arbitrated because they are encompassed by the plain and broad language of the arbitration agreements.

In their respective arbitration agreements, TGC, Borowski, and Italski agreed to submit to arbitration "any dispute or claim arising out of or relating to" their mortgage and loan agreements with Allstate, and their respective "relationship[s]" with Allstate, and Allstate's "charges, or . . . services." This language unambiguously encompasses each of the claims asserted by TGC, Borowski, and Italski against Allstate because each claim, and including their statutory claims, arise out of or relate to the mortgage and loan agreements, Allstate's charges or services, or TGC's, Borowski's, and Italski's respective relationships with Allstate.

TGC, Borowski, and Italski assert their statutory claims—under the CFA and the Civil RICO statutes—are not encompassed by the arbitration agreements because the agreements do not expressly provide for the waiver of statutory causes of action. In <u>Atalese</u>, the Court "emphasize[d] that no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights" as long as the language "clear[ly] and unambiguously" provides that the parties "choos[e] to arbitrate disputes rather than have them resolved in a court of law." 219 N.J. at 447. The Court in <u>Atalese</u> found an arbitration agreement to be unenforceable, but not because the agreement failed to expressly refer to the waiver of statutory claims. <u>Id.</u> at 446-47. Instead, the Court found the arbitration agreement unenforceable because it failed to include "clear and unambiguous language that plaintiff is waiving her right to sue or go to court to secure relief." <u>Id.</u> at 446. The arbitration agreements here do not suffer from a similar infirmity.

TCG, Borowski, and Italski rely on the Court's decision in <u>Garfinkle</u>, claiming it requires an arbitration agreement expressly provide for a waiver of statutory claims for such claims to be within the obligation to arbitrate. In <u>Garfinkle</u>, the Court determined an employment agreement that included an obligation to arbitrate claims "arising out of, or relating to, [the] [a]greement or

26

the breach thereof," 168 N.J. at 128, did not cover claims arising under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to 5-49, because "the language suggests the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself," id. at 135. It was under those circumstances that the Court found the agreement's failure to include an express reference to statutory claims reflected an intention to exclude statutory claims from the arbitration. Id. at 134-35. See Martindale v. Sandvik, Inc., 173 N.J. 76, 96 (2002) (explaining that in Garfinkle, the Court found the parties intended to arbitrate only claims arising "from the employment agreement itself" because the arbitration provision was limited to claims "arising from the '[a]greement or the breach thereof'" (quoting Garfinkle, 168 N.J. at 134)).

Here, the arbitration agreement does not include language limiting the claims subject to arbitration like that in Garfinkle. To the contrary, by their express terms, the arbitration agreements not only include disputes arising out of or relating to the mortgage and loan agreements and Allstate's charges and services, they also include disputes arising out of TGC's, Borowski's, and Italski's respective "relationships" with Allstate. Thus, all of the claims asserted, including their statutory causes of action, fall under the arbitration agreements'

27

broad umbrella. See, e.g., Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (explaining "[c]ourts have generally read the terms 'arising out of' or 'relating to' a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the contract" (quoting Angrisani v. Financial Tech. Ventures, L.P., 402 N.J. Super. 138, 149 (App. Div. 2008)).

In Martindale, the Court found similarly broad language included statutory claims within the arbitration obligation, even though the agreement made no mention of statutory claims. 173 N.J. at 96. The Court held that an agreement providing that the plaintiff waived her right to a jury trial in any action related to her employment, and that all disputes related to her employment were subject to arbitration, was sufficient to cover any related statutory claims. Id. at 96. The same result applies here. The arbitration agreements broadly, and without limitation, define the claims and disputes subject to arbitration, and TGC's, Borowski's, and Italski's claims clearly fall within the arbitration requirement. They are therefore bound to arbitrate their statutory claims against Allstate.

We therefore affirm the Chancery Division's March 1, 2019 order directing TGC and Allstate to proceed in arbitration over the claims against each

other. We also affirm the Law Division's June 13, 2019 order requiring that TGC, Borowski, and Italski, respectively, and Allstate proceed in arbitration on their claims against each other.

We note that Garry's and Ruane appeal in A-3827-18 from the Chancery Division's March 1, 2019 order compelling Allstate and TGC to proceed to arbitration, and from the court's April 12, 2019 order dismissing the Chancery Division action. We do not address the merits of Garry's's and Ruane's appeal from the April 12, 2019 order because, as noted, our July 31, 2019 order on their motion effectively reversed the April 12, 2019 order, and it remanded the matter for proceedings on the claims, including all of those asserted by Garry's and Ruane in their cross-claims and third-party complaint, which are not subject to the requirements of the arbitration agreements. Garry's and Ruane are not parties to the arbitration agreements, and, therefore, our July 31, 2019 order permits and requires the litigation of their claims on remand in the Chancery Division. We therefore dismiss their appeal in A-3827-18 as to the court's April 12, 2019 order as moot.

Garry's and Ruane also make numerous arguments supporting their contention the arbitration agreement between TGC and Allstate is unenforceable. Allstate contends Garry's and Ruane lack standing to contest the

enforceability of the arbitration agreement because neither is a party to the agreement and they are not third-party beneficiaries entitled to assert claims arising under the agreements.

It is a basic tenet of appellate review that "[o]nly a party aggrieved by a judgment may appeal therefrom." Price v. Hudson Heights Dev., LLC, 417 N.J. Super. 462, 466 (App. Div. 2011) (quoting Howard Sav. Inst. v. Peep, 34 N.J. 494, 499 (1961)); see also Calabro v. Campbell Soup Co., 244 N.J. Super. 149, 169 (App. Div. 1990). "[I]t is certain that there can be no appeal from an order by which a party is not aggrieved. The very object of the appeal is to redress an injury. If there be no injury to redress, there can be no appeal . . . ." Price, 417 N.J. Super. at 466 (quoting Green v. Blackwell, 32 N.J. Eq. 768, 770 (E. & A. 1880)). Mere dissatisfaction with a court order does not constitute a redressable injury. Ibid. (citing Hughes v. Eisner, 8 N.J. 228, 229 (1951) (dismissing for want of jurisdiction an appeal from a party who was successful in the Appellate Division but appealed out of dissatisfaction with the court's opinion)). Instead, "to be aggrieved, the party 'must have a personal or pecuniary interest or property right adversely affected by the judgment.'" N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 296 (App. Div. 2018) (quoting Howard Sav. Inst., 34 N.J. at 499).

We agree Garry's and Ruane lacked standing to assert any claims related to TGC's arbitration agreement with Allstate. They are not parties to the agreement and are not aggrieved by the court's March 1, 2019 order compelling TGC and Allstate to arbitrate disputes and claims solely between them. Garry's and Ruane may pursue their claims in the Chancery Division action. We therefore dismiss Garry's and Ruane's appeal in A-3827-18 from the court's March 1, 2019 order because they lack standing.

In addition, even if we found Garry's and Ruane had standing to challenge the court's March 1, 2019 order compelling arbitration between TGC and Allstate, we have considered their arguments and find they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We note only that we affirm the Chancery Division's March 1, 2019 order compelling arbitration of the claims between TGC and Allstate for each of the reasons previously detailed in our discussion of the issues in A-3018-18.

Affirmed as to A-3018-18 and A-4524-18. A-3827-18 is dismissed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3018-18T1